[Civ. No. 7533. Fifth Dist. June 1, 1984.]

SANDRINI BROTHERS, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
GONZALO GARIBAY et al., Real Parties in Interest.

**[Opinion certified for partial publication.\*]**

---

*Parts I through III (including the appendix) are not published, as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

880

COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, Kenwood C. Youmans and George E. Preonas for Petitioner.

Manuel M. Medeiros, Daniel G. Stone and Michael G. Lee for Respondent.

Dianna Lyons, Daniel A. Garcia and Wendy Sones for Real Parties in Interest.

**OPINION**

**ANDREEN, Acting P. J.**—Petitioner, Sandrini Brothers (Sandrini or petitioner), seeks review of an order of the Agricultural Labor Relations Board (ALRB or Board) finding that Sandrini committed unfair labor practices in the discharge of certain employees and by engaging in unlawful surveillance. The issues presented are (1) whether substantial evidence supports the finding that the employees were laid off out of proper order in retaliation for their union activities and support, (2) whether substantial evidence supports the finding that petitioner engaged in unlawful surveillance, and (3) whether the Board's order and remedy is punitive and/or unconstitutional by virtue of charging interest at a rate in excess of 10 percent.

Following the filing of charges of unfair labor practices against Sandrini, administrative law officer, now administrative law judge (ALJ), Beverly Axelrod conducted a hearing and issued her decision finding that Maria Giron, Nazario Hernandez, Lucia Sanchez, Benjamin Zamano, Jesus Gutierrez, Gonzalo Garibay and Leticia Martinez had been laid off by Sandrini in retaliation for their union activities and support, and thus Sandrini had violated sections 1153(a) and (c) of the Agricultural Labor Relations Act (ALRA or Act).

The Board affirmed the ALJ's rulings, findings and conclusions and adopted her recommended order. In addition, it found that Sandrini had unlawfully surveilled union organizers attempting to speak with company employees, a violation of section 1153(a) of the Act.

## I. FACTS*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV. AMOUNT OF INTEREST

After having found that Sandrini committed unfair labor practices by laying off employees in retaliation for their union activities and by engaging in unlawful surveillance, the Board ordered Sandrini to "Make whole the em-

*See footnote, *ante,* page 878.

ployees . . . for all losses of pay and other economic losses they have suffered as a result of their discriminatory layoff, the reimbursement amounts, plus interest, to be computed in accordance with our Decision and Order in *Lu-Ette Farms, Inc.* (August 18, 1982) 8 ALRB No. 55.''

In *Lu-Ette Farms, Inc.* (1982) 8 A.L.R.B. No. 55, the Board adopted the backpay interest rate formula used by the National Labor Relations Board (NLRB).[4] The interest rate is that charged or paid by the Internal Revenue Service (IRS) on delinquent or overpaid taxes. It is adjusted periodically and is derived by taking the average predominant prime rate quoted by commercial banks to large businesses as determined by the Board of Governors of the Federal Reserve System. It thus closely reflects the actual cost of money.　■　Because the interest charged or paid by the IRS currently exceeds 10 percent, Sandrini contends that the Board's order violates the interest limitations on court judgments as set forth in the California Constitution, article XV, section 1, and Code of Civil Procedure section 685.010.

California Constitution, article XV, section 1, provides in pertinent part: "The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both." Code of Civil Procedure section 685.010, subdivision (a), provides: "(a) Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Sandrini also contends that the order must be overturned because the interest rate formula results in a remedy which is punitive in nature.

The question of whether a backpay award may carry more than 10 percent interest is of first impression.

The constitutional language, by its terms, refers to "a judgment rendered in any court in this state."

■　■　A board, such as the ALRB, is not a "court" in the normal usage of the term. The Board is an administrative agency over which appellate courts exercise original jurisdiction in a proceeding in the nature of mandamus. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 352 [156 Cal.Rptr. 1, 595 P.2d 579].) It has promulgated its own procedural rules in the form of regulations (Cal.

---

[4] See *Florida Steel Corporation* (1977) 231 N.L.R.B. 651, enforcement denied on other grounds, *N.L.R.B.* v. *Florida Steel Corp.* (5th Cir. 1978) 586 F.2d 436.

Admin. Code, tit. 8, § 20200 et seq.); it is not bound by the provisions of the Code of Civil Procedure. Its orders are not "judgments" in the normal sense of the word, for they must be enforced by a superior court under the last paragraph of Labor Code section 1160.8.[5]

Nor is the Board a "court" in the constitutional sense, for article VI, section 1 of the California Constitution provides in part that "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, municipal courts, and justice courts."

Whether the constitutional term should be construed so broadly as to include remedial orders of quasi-judicial agencies should depend upon the nature of such an award. The more closely an award has the attributes of a judgment, the more compelling is the argument that the constitutional limitations apply. An ALRB order is dissimilar to a normal judgment in several important respects.

The ALRA was enacted "to bring certainty and a sense of fair play to a presently unstable and potentially volatile condition in the state." (Preamble to the ALRA [Stats. 1975, Third Ex. Sess., ch. 1, § 1, p. 4013].) This indicates a public policy over and above one of determining bare legal rights between employers and employees. ALRB remedies are designed to effectuate public policy; on the other hand, civil court monetary judgments, with a few exceptions such as an award of punitive or treble damages pursuant to express statutory authority, afford no more than an individual remedy of just compensation for loss or injury following a legal wrong of a private nature.

When it enacted the ALRA, the Legislature inserted language in Labor Code section 1160.3 providing that on finding an unfair labor practice by an employer, the Board may "take affirmative action, including reinstatement of employees with or without backpay, and making employees whole, when the board deems such relief appropriate, for the loss of pay resulting from the employer's refusal to bargain, and to provide such other relief as will effectuate the policies of this part." This is in addition to the provision for a backpay award. (For a statement of the history of the make-whole

---

[5]Labor Code section 1160.8 provides in pertinent part: "If the time for review of the board order has lapsed, and the person has not voluntarily complied with the board's order, the board may apply to the superior court in any county in which the unfair labor practice occurred or wherein such person resides or transacts business for enforcement of its order. If after hearing, the court determines that the order was issued pursuant to procedures established by the board and that the person refuses to comply with the order, the court shall enforce such order by writ of injunction or other proper process. The court shall not review the merits of the order."

order, see Thaxter, *Make-Whole Relief Under the California Agricultural Labor Relations Act: The Ex-Cell-O Doctrine Revisited* (1981) 21 Santa Clara L.Rev. 1069 and Atkins-Pattenson, *Make-Whole Under the Agricultural Labor Relations Act: It's Applicability and Scope* (1979) 13 U.S.F. L.Rev. 971.) This compares with section 10(c) of the National Labor Relations Act (29 U.S.C. § 160), which in similar part provides: "and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter."

It should be noted that in addition to the provision of a make-whole award for an employer's refusal to bargain, the Legislature added the following to the NLRA language: "*and to provide such other relief* as will effectuate the policies of this part" (Lab. Code, § 1160.3, italics added).

Even under the national act, courts have generally placed greater stress on the public policy goal of enhancing overall stability by discouraging unfair labor practices than on compensation of employees. (*N.L.R.B.* v. *Madison Courier, Inc.* (D.C.Cir. 1972) 472 F.2d 1307, 1316.) Such stability is enhanced by utilization of the NLRB interest formula, since when adopting it in *Lu-Ette Farms, Inc.* the Board noted that a lower rate of interest tends to discourage voluntary settlements and encourages dilatory tactics by growers. The interest rate was adopted, then, as more than the price paid for the borrowing of money; it was adopted as a tool to be used by the Board to effectuate its concept of public policy.

The emphasis on NLRB and ALRB remedies being designed to effectuate public policy, rather than the affording of a private remedy to the immediate parties, *as is the case in civil judgments,* is well established.[6] (Lab. Code, § 1160.3. See also, e.g., *Nathanson* v. *Labor Board* (1952) 344 U.S. 25, 27 [97 L.Ed.2d 23, 28, 73 S.Ct. 80] ["A back pay order is a reparation order designed to vindicate the public policy of the statute by making employees whole for losses suffered on account of an unfair labor practice"]; *N.L.R.B.* v. *Mastro Plastics Corporation* (2d Cir. 1965) 354 F.2d 170, 175 ["The back pay remedy has the twofold purpose of reimbursing employees for actual losses suffered as a result of a discriminatory discharge and of

[6]See also *Developments in the Law: Damages 1935-1947* (1947) 61 Harv.L.Rev. 113, 195: "[B]ack-pay awards under Section 10(c) of the NLRA [29 U.S.C. § 160(c)] function as an intrinsic part of the mechanism for enforcing the policy of the Act—fostering employees' rights to organize. Accordingly, they conform to no traditional category of damages; any punitive or compensatory effect is incidental to their primary function." (Fns. omitted.)

*Section 10(c) is generally analogous to Labor Code section 1160.3.* The differences between the two provisions reflect a legislative intent to give the ALRB *broader* remedial powers than the NLRB's. (*Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 865 [176 Cal.Rptr. 753, 633 P.2d 949].)

furthering the public interest in deterring such discharges"].)[7] And the power to fashion and order backpay and other remedies is vested in the expert regulatory agency alone, not in the courts of the state. (See *Labor Board* v. *Seven-Up Co.* (1953) 344 U.S. 344, 346 [97 L.Ed. 377, 381, 73 S.Ct. 287].)

We turn from a discussion of the differences between an ALRB award and a civil judgment based upon policy arguments to an analogy between the statutes governing family law actions and ALRB matters.

The Civil Code section 4800 mandate that the court divide community property equally in a dissolution proceeding, along with the provision in subdivision (d) that "The court may make such orders as it deems necessary to carry out the purposes of this section," was sufficient to justify an award of 10 percent interest on the unpaid amount that the husband was ordered to pay the wife in order to equalize the community property in *In re Marriage of Stallcup* (1979) 97 Cal.App.3d 294, 302 [158 Cal.Rptr. 679]. At the time of the judgment in the trial court (1977), interest on judgments was 7 percent. The panel stated at page 302: "Marital property dispositions are not limited by the judgment interest rate of 7 percent, but are controlled by the dictates of fairness and equity in Civil Code section 4800. . . . In these times the 10 percent figure is not an unfair recompense to wife for husband's interim use of the principal sum due."

The legislative mandate to divide community property equally in dissolution proceedings, coupled with the general investiture of power to make "such orders as . . . necessary" was deemed by the *Stallcup* court sufficient to make orders to pay interest on unpaid balances in dissolution proceedings sufficiently unlike ordinary judgments to justify a departure from the constitutional mandate that interest on judgments be fixed at 7 percent. Civil Code section 4800, subdivision (d), providing for "such orders as . . . necessary to carry out the purposes [of equal division]," is substantially similar to Labor Code section 1160.3's direction "to provide such other relief as will effectuate the policies of" the ALRA. The corollary between

---

[7]In *J.R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1 [160 Cal.Rptr. 710, 603 P.2d 1306] the Supreme Court recognized that ALRB remedial awards are intended to effectuate the overall policies and purposes of the Act, and not necessarily to precisely compensate every loss or vindicate every wrong suffered by private parties or individuals. Thus, the *Norton* court indicated that there may be some situations in which the Board—to further the important public policy of protecting employee free choice in elections—must refrain from awarding make-whole relief to victims of unfair labor practices, even though such employees suffer economic losses and even though the employer's technical refusal to bargain is ultimately ruled unlawful. Again, this focus on policy plainly differs from a court judgment resolving private rights and awarding private damages.

Civil Code section 4800 and Labor Code section 1160.3 is clear. ALRB awards, the primary function of which are to encourage stability at the workplace, are equally dissimilar to judgments so as to avoid the provisions of the Constitution.

Just as the state is legitimately interested in preserving the family unit, the health and welfare of its members, and the economic survival of each upon the unit's termination (for whatever cause), it is similarly interested in the health and welfare of its citizens with respect to farm employer-employee relationships. The Family Law Act (Civ. Code, § 4000 et seq.) and the ALRA (Lab. Code, § 1140 et seq.) establish certain minimal requirements governing conduct within either relationship, and, of particular significance here, governing the dissolution of either relationship. The state not only governs the permissible bases for severing the relationship by establishing grounds for divorce, and prohibiting certain grounds for discharging agricultural employees, it also provides a forum—vested with appropriate discretion—to address the economic questions that arise.

There are other differences between ALRB orders and court judgments.

As stated in *Nish Noroian Farms* v. *Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 736 [201 Cal.Rptr. 1, 677 P.2d 1170]: "The boards (ALRB and NLRB) are [] for the vindication of public, not private, rights, and a charge filed with either is not the equivalent of a court complaint."

While any person or party can initiate a civil action leading to court judgment (Code Civ. Proc., § 30), only the general counsel of the ALRB can issue the administrative complaints which begin the Board's unfair labor practice proceedings. (Lab. Code, §§ 1149, 1160.2.)

■ A court judgment is considered property which may be transferred, like other property, even prior to payment thereof. (*Pacific Gas & Elec. Co.* v. *Nakano* (1939) 12 Cal.2d 711, 713 [87 P.2d 700, 121 A.L.R. 417].) ■ An ALRB backpay award, on the other hand, "is not a private judgment or a chose in action belonging to the employee, and he has no property right in the award pending his actual receipt of it." (*National Labor Relations Bd.* v. *Sunshine Mining Co.* (9th Cir. 1942) 125 F.2d 757, 761. [The amounts payable under the NLRB order were unliquidated. It was reasoned that third party creditor interference with the authority of the NLRB and control of the court would impede the exercise of their powers.] See also

N.L.R.B. v. *Threads, Incorporated* (4th Cir. 1962) 308 F.2d 1, 8 [discriminatee's right to reinstatement and backpay "is not a private right subject, like an ordinary debt, to private adjustment, but a remedy that is provided in the public interest in order to enforce a public right." The amount of backpay was unliquidated. The employer attempted to induce three employees to release their rights to reinstatement for a cash settlement.])

The United States Supreme Court long ago recognized that an NLRB backpay award is not subject to the same constitutional limitations as is a money judgment rendered by a court. (*Labor Board* v. *Jones & Laughlin* (1937) 301 U.S. 1, 48 [81 L.Ed. 893, 917-918, 57 S.Ct. 615, 108 A.L.R. 1352] [NLRB backpay award derives from special statutory proceeding, and is not equivalent to common law money judgment. Hence, Seventh Amendment right to jury trial is inapplicable].) Applied here, the *Jones & Laughlin* analysis confirms that the ALRB backpay award is not subject to state constitutional limitations on court judgments.

Indeed, the California Court of Appeal has already determined, in a somewhat different context, that ALRB orders are not money judgments and are not governed by state constitutional provisions relating to money judgments. In *Perry Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1978) 86 Cal.App.3d 448 [150 Cal.Rptr. 495], an employer (Perry) argued that it was entitled to a jury trial in ALRB unfair labor practice proceedings because the resulting Board order—making employees whole for losses suffered as a result of the employer's violations—was analogous to a court money judgment. Perry relied on article I, section 7 of the California Constitution (which generally provides for trial by jury in civil actions and criminal cases) and on section 592 of the Code of Civil Procedure (which provides that, absent waiver, issues of fact must be tried by a jury in actions for money damages).

The court rejected Perry's claim, noting (1) that the Legislature was authorized, under article XIV, section 1 of the California Constitution, to provide for resolution of labor disputes by the ALRB notwithstanding article I, section 7; and (2) that ALRB proceedings "are neither civil actions nor proceedings known to the common law and absent a statute providing for a jury trial in such proceedings, no such right exists." (*Perry Farms, Inc.* v. *Agricultural Labor Relations Bd., supra,* 86 Cal.App.3d at p. 464.)[/] The court cited *Labor Board* v. *Jones & Laughlin, supra,* 301 U.S. at pages 48-49 [81 L.Ed. at p. 918], with approval.

To date, no court has entered any money judgment in this matter. Upon this affirmance, the matter will go back to the Board which will then conduct backpay proceedings. (Cal. Admin. Code, tit. 8, § 20290.)

If we may assume the obvious—that the parties will be unable to agree as to the amount of backpay due—the controversy will be set for a hearing. An ALJ then will conduct a formal evidentiary hearing. After receiving briefs, etc., the judge then will file her decision whereupon the matter will be transferred to the Board. The procedure will be the same as was utilized to determine whether there was an unfair labor practice. (Cal. Admin. Code, tit. 8, §§ 20290, 20240-20298.) If no exceptions are filed, the decision of the ALJ will become final; if exceptions are filed, the Board will then review the law and evidence and make a determination of whether the factual findings are supported by a preponderance of the evidence. (Cal. Admin. Code, tit. 8, § 20286.) It is only after this second round of litigation that an order for the payment of a specific amount of money will be made. If Sandrini does not voluntarily comply, the Board may then apply to the superior court for an enforcement order. (Lab. Code, § 1160.8.) There is no money "judgment of any court of this state" until this latter superior court enforcement order.[8]

The above discussion of differences between a money judgment and an order under the ALRA convinces us that the constitutional interest rate of 10 percent is inapplicable.

Sandrini argues that if it does not apply, then the 7 percent rate contained in the first paragraph of article XV, section 1 of the California Constitution applies: "The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand, shall be 7 percent per annum . . . ."

The difficulty with this argument is that a backpay award is not a loan or forbearance. Nor is it a demand on an account. There is no account.

■ Sandrini also argues that the NLRB interest rate is punitive. This argument fails because the interest rate closely approximates the actual cost of money.

---

[8]Alternatively, there is no money "judgment of any court of this state" until this court or the Supreme Court grants a petition to review any backpay award and enforces that order.

The question presents itself—if the Board order provides for the NLRB rate of interest, what occurs if a grower, deeming himself aggrieved by the Board's initial order in that or any other respect, seeks a review of such order in the Court of Appeal, and the appellate court then enters its order enforcing or modifying and enforcing as so modified the Board order? Is this judicial action taken as a result of such activity sufficient to transmute the Board order to such a degree that the constitutional rate should apply?

There are compelling policy reasons to hold that an appellate court judgment does not so transform a Board order. If it did, every grower would have a strong incentive to file a petition, for even if the petition were granted and the employer lost, the interest rate would thereafter be lower even though the backpay proceedings had not been completed. Such a result would run contrary to the public policy of providing peace and stability in agricultural labor relations. We do not think that such a result is required, for at this level, there is still no monetary judgment enforceable through an injunction or other process of the court.

We believe, however, that after the Board has gone to the superior court and obtained a court order pursuant to Labor Code section 1160.8, that order becomes vested with enough of the attributes of a judgment that the constitutional rate should thereafter apply. The full processes of a court of law may then be brought to bear to obtain compliance and enforcement. Similarly, upon the enforcement of a backpay award by an appellate court, after the granting of a petition for review, the order becomes vested with enough of the attributes of a judgment so that the constitutional rate should thereafter apply.

As to any backpay award, then, the NLRB interest rate will apply up until the time of compliance or a superior court enforcement order is obtained or the award is enforced by an appellate court. Thereafter, the legal rate will apply to the sum of the backpay award and accrued interest at the NLRB rate.

Such a metamorphosis is not unknown in the law. For instance, when a domestic judgment is obtained in California based upon a judgment in a sister state, the California judgment is entered for the amount unpaid under the sister state judgment, plus interest accrued computed at the rate of interest applicable to the judgment under sister state law. From time of entry of the judgment here, however, interest accrues at the rate applicable to a judgment entered in this state. (Code Civ. Proc., § 1710.25.) This is the common law rule. (*Wells, Fargo & Co.* v. *Davis* (N.Y. 1887) 105 N.Y. 670 [12 N.E. 42]; 47 C.J.S., Interest and Usury, § 35, subd. b, p. 87.)

## V. Conclusion

The order of the Board is enforced with the direction that when and if a court order is obtained pursuant to the provisions of Labor Code section 1160.8, it shall thereafter bear interest at the rate of 10 percent.

Woolpert, J., and Hamlin, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 8, 1984. Bird, C. J., did not participate therein.