[No. B016185. Second Dist., Div. Five. Dec. 31, 1986.]

JOHN SIEBEL ASSOCIATES, Plaintiff and Respondent, v.
MICHAEL L. KEELE, Defendant and Appellant.

COUNSEL

David S. White, Edward G. Burg and Dern, Mason & Floum for Defendant and Appellant.

Raiskin & Revitz and Steven J. Revitz for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—A judgment debtor seeks to partially vacate a judgment entered pursuant to stipulation on the ground that it is void because it provides for an interest rate greater than the rate set by the Constitution. The first question before us is whether a stipulated judgment may carry a 15 percent interest rate. We find that it may not. We must also determine whether the stipulated judgment in this case was enforceable and, therefore, subject to the constitutional interest rate at the time it was entered. We find that the judgment was qualified when first entered and not subject to the constitutional rate. At the time the judgment became enforceable the constitutional rate became applicable. We therefore affirm the trial court ruling which denied the partial vacation of the judgment, but remand for further proceedings on the writ of execution, which presently reflects the 15 percent interest rate.

FACTS

During 1979 appellant Michael L. Keele (Keele), doing business as Michael L. Keele Enterprises, and respondent John Siebel Associates (Seibel) entered into three contracts by which Siebel would perform architectural services. Each agreement had a provision for arbitration of disputes between the parties. In July 1980 Siebel filed three petitions to arbitrate its disputes with Keele, one petition for each contract. On December 16, 1980, the parties signed a stipulation for entry of arbitration award. The stipulation contained two key provisions: (1) Keele would pay Siebel, in monthly installments over 10 months, the principal sum of $106,479.93, with interest at 15 percent per year; and (2) upon default and failure to cure, the remaining principal balance plus all accrued interest would become immediately due and payable. The arbitrator's award was entered pursuant to the stipulation.

In February 1981, Siebel filed a motion to correct[1] and confirm the arbitration award. In March the parties again entered into a stipulation, agreeing to the correction and confirmation of the arbitrator's award. The parties also agreed that the arbitrator's award could be entered as a judgment against Keele with the condition that Siebel would not seek to file an abstract or to execute the judgment unless (1) Keele failed to cure a default under the terms of the judgment and (2) Siebel gave Keele 24 hours' written notice of the remaining amount owed after his failure to cure. On April 6, 1981, the judgment was entered against Keele. The stipulated judgment contained both provisions mentioned above, i.e., Keele agreed to pay 15 percent annual interest on $106,479.93, and the remaining balance plus accrued interest would become due upon default.

On July 13, 1981, Siebel sought to enforce the judgment.[2]

On June 17, 1985, Keele filed a motion seeking, inter alia, to vacate the judgment as partially void on its face, to quash Siebel's writ of execution,

---

[1]Siebel's moving papers stated that the arbitration award erroneously referred to Keele as "Michael L. Keele Enterprises." Siebel requested that the award be corrected to refer to Keele as "MICHAEL L. KEELE dba MICHAEL L. KEELE ENTERPRISES."

[2]Siebel filed abstracts of judgment in Orange, Santa Barbara, San Bernardino and San Diego Counties as early as July 1981. Recordation of an abstract creates a lien upon real property but is not an execution upon a judgment. (*Industrial Indemnity Co.* v. *Levine* (1975) 49 Cal.App.3d 698 [122 Cal.Rptr. 712].)

and to order acknowledgment of partial satisfaction of judgment. The motion was denied. ██ This appeal followed.[3]

## Discussion

Section I, article XV of the California Constitution provides that interest on "a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum." In the absence of a statutory rate, the rate of interest on any judgment is 7 percent. (Cal. Const., art. XV, § 1.) Code of Civil Procedure section 685.010, subdivision (a), effective January 1, 1983, established a 10 percent annual interest rate "on the principal amount of a money judgment remaining unsatisfied."

Keele contends that the stipulated judgment is partially void because it awards a usurious interest rate of 15 percent. He argues that the constitutional rate applies to all judgments. Siebel seeks to maintain the agreed upon rate.[4] It contends that stipulated judgments are not judgments rendered and

---

[3]An order denying a motion to vacate a void judgment is appealable as a final order after judgment (Code Civ. Proc., § 904.1, subd. (b)) if the underlying judgment was appealable. (*County of Ventura* v. *Tillett* (1982) 133 Cal.App.3d 105, 110-111 [183 Cal.Rptr. 741], disapproved on another ground in *County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 492, fn. 4 [198 Cal.Rptr. 779, 674 P.2d 750].) Though judgments entered pursuant to stipulations are generally not appealable (*Atchison, T. & S.F. Ry. Co.* v. *Hildebrand* (1965) 238 Cal.App.2d 859, 861 [48 Cal.Rptr. 339]), even stipulated judgments are subject to appeal on constitutional grounds. (See *County of Ventura* v. *Tillett, supra,* 133 Cal.App.3d 105, 110-111.) This appeal, therefore, is properly before us.

Siebel contends that Keele is barred from attacking the judgment because he consented to the arbitrator's award. Siebel relies on cases which hold that consent to the entry of a judgment is a waiver of any error therein (*Browand* v. *Scott Lumber Co.* (1954) 125 Cal.App.2d 68 [269 P.2d 891]), and that a stipulated judgment may not be collaterally attacked (*Klinker* v. *Klinker* (1955) 132 Cal.App.2d 687 [283 P.2d 83]). Siebel cites *Harris* v. *Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447, 452-453 [49 Cal.Rptr. 610], which states that "[o]rdinarily" one may not "contradict a stipulation" even if the stipulation affects the statutory or constitutional rights of the party. Nevertheless, a stipulated judgment is as conclusive as one entered after trial, and is subject to a motion to vacate. (*Stevens* v. *Stevens* (1968) 268 Cal.App.2d 426, 435-436 [74 Cal.Rptr. 54].) Motions to vacate void judgments may be made at any time after judgment. (*County of Ventura* v. *Tillett, supra,* 133 Cal.App.3d 105, 110.) A judgment is void on its face if the trial court exceeded its jurisdiction by granting relief that it had no power to grant. (*Ibid.*) Jurisdiction cannot be conferred on a trial court by the consent of the parties. (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Roberts* v. *Roberts* (1966) 241 Cal.App.2d 93, 101 [50 Cal.Rptr. 408].) Thus, the fact that a judgment is entered pursuant to stipulation does not insulate the judgment from attack on the ground that it is void.

[4]In addition to the limits on the interest rate for judgments, article XV, section 1 of the state Constitution sets the rate of interest "upon the loan or forbearance of any money, goods, or things in action . . ." at 7 percent or, if in writing, at not more than 10 percent. The stipulations between Keele and Siebel were neither loans nor forbearances within the meaning of the usury laws. (*Boerner* v. *Colwell Co.* (1978) 21 Cal.3d 37, 44, fn. 7 [145 Cal.Rptr. 380, 577 P.2d 200], and cases cited therein.) The stipulations, therefore, were not usurious.

are not subject to the constitutional interest rate. ■ Judgments entered by courts on the stipulation of the parties, however, have the same effect as actions tried on the merits. (*Avery* v. *Avery* (1970) 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195].) ■ A stipulated judgment is subject to the constitutional interest rate for judgments. (*Rogers* v. *Springfield Fire etc. Ins. Co.* (1928) 92 Cal.App. 537, 541 [268 P. 679].) No judgment may provide for a 15 percent rate of interest. Nevertheless, we do not find that the judgment in this case awards a usurious interest rate.

■ The age-old axiom that the law gives effect to the meaning of words rather than to their form (Civ. Code, § 3528) is applicable in the construction of the effect of a judgment. (*Schisler* v. *Mitchell* (1959) 174 Cal.App.2d 27, 29 [344 P.2d 61].) Thus, the fact that the document filed in April 1981 is designated a judgment and signed by a superior court judge is not binding. ■ The interpretation of the effect of a judgment is a question of law within the ambit of the appellate court. (*Estate of Norris* (1947) 78 Cal.App.2d 152, 159 [177 P.2d 299].) In case of doubt regarding the meaning or consequence of a judgment, or any part of it, the whole record may be examined to ascertain the meaning. (*Watson* v. *Lawson* (1913) 166 Cal. 235, 241 (135 P. 961]; see *In re Ferrigno* (1937) 22 Cal.App.2d 472, 474 [71 P.2d 329].)

■ In the December 1980 agreement between Keele and Siebel, entered as the arbitrator's award, Keele agreed to pay the principal debt he owed Siebel for services rendered in monthly installments from December 1980 through October 1981. Keele agreed to 15 percent interest on the principal.

The judgment entered in April 1981 contains the same terms found in the arbitrator's award. The judgment, though, was entered without contest pursuant to an agreement outside the judgment but filed with the trial court on March 16, 1981, and properly part of the record on appeal. By that agreement, in exchange for a stipulated judgment in its favor, Siebel agreed not to pursue any execution of the judgment until Keele both defaulted in his monthly payments and failed to cure. As long as Siebel did not seek to enforce the judgment, the interest rate should have remained 15 percent even though the agreement was entered as a judgment. Thus, the April 6, 1981, judgment Siebel obtained against Keele was not absolutely enforceable.

The court in *Sandrini Brothers* v. *Agricultural Labor Relations Bd.* (1984) 156 Cal.App.3d 878 [203 Cal.Rptr. 304], decided a similar question in a different context. The issue in *Sandrini* was whether an Agricultural Labor Relations Board (ALRB) order awarding backpay may carry an interest rate higher than 10 percent. The court found that ALRB orders are not judg-

ments and are not subject to the constitutional limit. Once a party seeks to enforce an ALRB order by obtaining a superior court order, however, the order becomes "vested with enough of the attributes of a judgment" that the constitutional rate thereafter applies. (*Id.,* at p. 889.) The *Sandrini* court reasoned that the ALRB order became a judgment for purposes of constitutional interest rate application when the processes of a court became available "to obtain compliance and enforcement." (*Ibid.*) Conversely, a conditional judgment, one which cannot be enforced through the judicial process without the occurrence of certain conditions, lacks an important attribute of a judgment. The judgment awarded to Siebel was a judgment in some respects. For example, all issues were resolved except for compliance with the terms of the stipulation. Thus, it met the test of finality promulgated in *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]. In terms of enforceability, however, it was a conditional, qualified judgment on April 6, 1981.

Qualified judgments have been recognized by courts answering the question that is before this court, i.e., whether the judgment or contract interest rate applies. Courts have held that the allowance by a probate court of a claim against an estate and the filing of that claim with the clerk does not carry the "dignity and force of an absolute judgment." (*Haub* v. *Leggett* (1911) 160 Cal. 491, 494 [117 P. 556]; *Hilton* v. *McNitt* (1957) 49 Cal.2d 79, 83 [315 P.2d 1].) Rather, the claims are deemed qualified judgments and acknowledgments of debts. (*Hilton* v. *McNitt, supra,* quoting *Estate of Bell* (1914) 168 Cal. 253, 258 [141 P. 1179].) Until the judgments become absolute, the contract rate of interest applies; once they become absolute, the judgments bear the statutory rate. (*Estate of Bell, supra; Hilton* v. *McNitt, supra,* 49 Cal.2d 79, 83.) Of course, the rationale of the probate cases is that the claims are not conclusive once acknowledged because they are still subject to attack by the heirs. Siebel's claim was not inconclusive; the judgment of April 6 clearly defined its rights. Nevertheless, its right to seek redress from the courts to collect the agreed-upon amount was tethered to and dependent upon the actions of another, i.e., Keele. Siebel was in a better position than an ordinary creditor because it had a judgment without having a trial. Yet, the ordinary creditor can take a judgment and execute upon it immediately. Siebel could do so only upon Keele's default and failure to cure. Thus, Siebel's rights were less than those of the typical judgment creditor, and we find its judgment to be less than absolute. The constitutional interest rate limitation which applies to judgments did not apply to the stipulation of April 6, 1981. The agreed-upon interest rate, 15 percent, remained in effect. Thus, we affirm the trial court's denial of the motion to vacate the judgment as partially void.

Once Siebel availed itself of the judicial process to enforce the stipulated judgment, however, the judgment lost its qualified nature and became ab-

solute. From that time on, the constitutional rate applied. (*Sandrini Brothers* v. *Agricultural Labor Relations Bd., supra,* 156 Cal.App.3d 878.) Thus, to the extent that the trial court denied Keele's motion to quash the writ, we reverse and remand. The trial court is instructed to calculate the interest due on the principal sum of $106,479.93 at the time Siebel sought enforcement. The rate of interest which applied between April 6, 1981, and July 13, 1981, is clear—15 percent per year pursuant to stipulation.[5] But the calculation of the actual amount of interest may be achieved in more than one way under our reading of the stipulation. The trial court is to determine the amount of the actual judgment—$106,479.93, plus the interest due at the contract rate at the time of the application for the writ—and apply the judgment rate of interest to that amount.[6] The constitutional interest rate in effect up December 31, 1982, was 7 percent. On January 1, 1983, the interest rate on judgments was raised to 10 percent. (*Hersch* v. *Citizens Savings & Loan Assn.* (1985) 173 Cal.App.3d 373 [218 Cal.Rptr. 646]; Code Civ. Proc., § 685.010.) The *Hersch* case controls the calculation of the interest on the judgment.

■ Finally, Keele's motion to vacate the judgment also requested an order acknowledging partial satisfaction of the judgment. Keele contends that he has paid Siebel $96,603.49. Siebel admits that it has received $91,603.49. The dispute concerns $5,000 and arises over a payment made by a Mr. McCarthy on behalf of Keele on March 24, 1982. McCarthy's check was in the amount of $30,000. Siebel contends that it received only $25,000 from the check because $5,000 was paid to one George Hope "who was instrumental in arranging for the payment of said money."

The trial court denied Keele's request. Keele complains that the trial court erroneously relied on the declaration of Siebel's attorney in ruling on the motion. Keele contends that the declaration was incompetent and not shown to be based on personal knowledge. In the declaration the attorney states that he could competently testify to Siebel's version of the facts surrounding the check in question. Thus, the showing of personal knowledge was made. Furthermore, Code of Civil Procedure section 2009 allows trial courts to determine motions on declarations alone and, in their discretion, to refuse oral testimony. (*Reifler* v. *Superior Court* (1974) 39 Cal.App.3d 479, 483 [114 Cal. Rptr. 356].) Thus, Code of Civil Procedure section 2009 is a statutory exception to the general rule that declarations are not competent evidence. (1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule,

---

[5]By the terms of the stipulation the 15 percent rate was in effect from December 15, 1980. Pursuant to our interpretation of the effect of the stipulated judgment, the 15 percent rate remained in effect until Siebel sought the writ of execution.

[6]The trial court, of course, must take into consideration amounts Keele paid on the judgment.

§ 831, p. 790.) Keele has not established that the trial court abused its discretion by deciding the motion in favor of Siebel based on the declaration of its attorney.

The order denying vacation of the judgment is affirmed. We reverse the denial of the motion to quash the writ and remand for further proceedings in light of this judgment. The parties shall bear their respective costs on appeal.

Feinerman, P. J., and Eagleson, J., concurred.

A petition for a rehearing was denied January 26, 1987, and the petitions of both parties for review by the Supreme Court were denied March 17, 1987.