951 F.2d 186
 CONSOLIDATED AMERICAN INSURANCE COMPANY,
Plaintiff-Counter-defendant-Appellant,
v.
MIKE SOPER MARINE SERVICES, et al., Defendants,
and
Carl Mayerhofer, individually and as Assignee of Michael
Soper, Defendant-Counter-plaintiff-Appellee.
 No. 89-55929.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1990.
Decided Aug. 23, 1991.
Amended Dec. 6, 1991.
 
 Irving H. Greines and Marc J. Poster, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for plaintiff-counter-defendant-appellant.
 Brooks L. Iler, Shaffman, Iler, Palkowitz & Doft, San Diego, Cal., for defendant-counter-plaintiff-appellee.
 Before HUG, CANBY and WIGGINS, Circuit Judges.
 OPINION
 HUG, Circuit Judge:
 
 
 1
 This appeal concerns the duty of an insurance carrier to defend an action against the insured. In this case, after the carrier refused the defense, a settlement was reached between the injured claimant and the insured for $1,000,000. The insured assigned his claims against the carrier in exchange for the claimant's covenant not to execute against the insured on the judgment. The injured claimant brought this suit against the carrier asserting the insured's claim of a breach of the carrier's duty to defend and a bad faith refusal to settle within the policy limits of $500,000. The district court granted summary judgment against the carrier for $1,000,000 plus $123,835.39 in post-judgment interest. We affirm.
 
 
 2
 We have jurisdiction to hear this case under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir.1987). We affirm.
 
 I.
 
 3
 The facts set forth by the district court decision are undisputed and are as follows. During the period pertinent to this appeal, Mike Soper was in the marine salvage business. In June 1985, Soper sold a crane mounted on a barge to Carl Mayerhofer for Mayerhofer's use in marine salvage operations. The crane was designed to be mounted on a truck, tracks, or a barge. As the barge was not self-propelled, it needed to be towed to Mayerhofer. On November 11, 1985, while recovering a sunken boat, Mayerhofer's arm became entangled in a part of the crane mechanism causing immediate amputation of the arm just below the shoulder and several burst vertebrae. At that time, Soper was insured under a comprehensive liability policy entitled Preferred Business Package Policy Number CAL168397 ("Policy"). The Policy limit was $500,000.
 
 
 4
 On October 24, 1986, Mayerhofer brought a personal injury claim against Soper in state court. Soper was served with the complaint on January 29, 1987. The claim was reported in writing to Consolidated's claim agent on February 12, 1987, and was received the following day. On March 16, 1987, Consolidated unconditionally undertook the defense of Soper Marine without any reservation of right to later contest coverage. At that time, Soper's personal attorney, Michael Vaughn, withdrew his representation of Soper.
 
 
 5
 On March 18, 1987, Consolidated was granted an extension of time to answer the complaint. In a letter dated that same day, Consolidated's Brea branch claims manager issued a report of the accident. Among other things, the letter addressed the issue as to whether there was coverage for the loss. On March 24, 1987, Soper was contacted by counsel retained on his behalf by Consolidated. Soper was instructed by his personal attorney to cooperate fully with new counsel. Nonetheless, Consolidated notified the insured by letter, dated April 30, 1987, that it was denying coverage. Subsequently, Consolidated withdrew its defense of the underlying injury on June 1, 1987, pursuant to an exclusion clause in the Policy ("Watercraft Exclusion Clause"),[1] without ever having reserved its right to contest coverage.
 
 
 6
 A stipulated default judgment was entered in favor of Mayerhofer on January 22, 1988 in the amount of $1 million. In exchange for Mayerhofer's covenant not to execute on the judgment, Soper assigned all rights and interest against Consolidated to Mayerhofer. On February 23, 1988, Mayerhofer tendered a settlement offer of $500,000, the amount of the Policy limit, to which Consolidated never responded. Shortly thereafter, Consolidated filed this federal diversity action seeking a declaration that, under California law, the Policy provided no coverage.
 
 II.
 
 7
 Consolidated contends that the Watercraft Exclusion Clause contained in the Policy is plain and unambiguous. Further, Consolidated argues that Mayerhofer's claim against Soper clearly falls within the exclusion, thus, it is not liable to indemnify Soper for the amount of the stipulated judgment or any other amount. Accordingly, Consolidated maintains that because there was clearly no coverage under the terms of the Policy, there was no duty to defend Soper.
 
 
 8
 Under California law, it is well-established that "[w]ords used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to them." Reserve Ins. Co. v. Pisciotta, 30 Cal.3d 800, 180 Cal.Rptr. 628, 631, 640 P.2d 764, 767 (1982). While a court is prohibited from adopting a strained or absurd interpretation in order to create an ambiguity, if ambiguity or uncertainty does exist, it must be resolved against the insurer. Id. 180 Cal.Rptr. at 631-32, 640 P.2d at 767-68. Moreover, in order to protect the insured's reasonable expectation of coverage in a situation where the insurer controls the language of the policy, if possible, the contract is construed in accordance with its objective of providing indemnity for losses to which the insurance relates. Id. 180 Cal.Rptr. at 632, 640 P.2d at 768. In practice, the impact of this principle will vary according to whether the language to be construed is found in a clause providing coverage or in one limiting coverage, with coverage clauses being interpreted broadly, and exclusionary clauses being interpreted narrowly against the insurer. Id. Finally, with respect to exclusions, California courts have repeatedly held that "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect; thus, the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." Id. (citations and internal quotations omitted).
 
 
 9
 It is equally well-settled under California law that the duty to defend remains on the carrier so long as the suit potentially seeks damages within the coverage of the Policy. See Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 112, 419 P.2d 168, 176 (1966); accord Garriott Crop Dusting v. Superior Court, 221 Cal.App.3d 783, 270 Cal.Rptr. 678, 683 (5 Dist.1990) (duty to defend under a liability policy is independent of and broader than the duty to indemnify); Ohio Casualty Ins. Co. v. Hubbard, 162 Cal.App.3d 939, 208 Cal.Rptr. 806, 809 (2 Dist.1984) (insurer's duty to defend is broader than the duty to indemnify and is measured by the reasonable expectations of the insured); Miller v. Elite Ins. Co., 100 Cal.App.3d 739, 161 Cal.Rptr. 322, 330 (1 Dist.1980) (if there is doubt as to whether the insurer must defend, the doubt should be resolved in the insured's favor); State Farm Mut. Auto. Ins. Co. v. Flynt, 17 Cal.App.3d 538, 95 Cal.Rptr. 296, 302 (4 Dist.1971) (if circumstances indicate that liability or potential liability existed under the policy, the company will be held accountable to its insured in the action it refused to defend). In sum, the insurer's duty to defend, under California law, is broad based; even if coverage is ultimately denied the duty to defend has often still attached.
 
 
 10
 We find that the Watercraft Exclusion Clause is ambiguous in its application to this case. We are aware that both parties cite cases supporting their interpretation of the application of the exclusion to the barge and crane. See, e.g., Ison v. Roof, 698 F.2d 294, 298 (6th Cir.) (partially sunken work barge was not a "watercraft" within the meaning of the policy because it was used as a base for a conveyance and was not used as a transportation vessel), cert. denied, 461 U.S. 957, 103 S.Ct. 2429, 77 L.Ed.2d 1316 (1983); Soil Mechanics Corp. v. Empire Mut. Ins. Co., 55 Misc.2d 243, 285 N.Y.S.2d 391, 392 (1967) (raft or float used to mount soil boring equipment was not within the "watercraft" exclusion), aff'd, 29 A.D.2d 1052, 290 N.Y.S.2d 1020 (1968); but see, e.g., Snyder v. Travelers Ins. Co., 251 F.Supp. 76, 78 (D.Md.1966) (specially designed floating crane fell within the "watercraft" exclusion in the policy); Sloan Steel Erectors and Equip. Rental, Inc. v. Illinois Union Ins. Co., 158 A.D.2d 984, 551 N.Y.S.2d 136, 136 (1990) (twelve foot by thirty-one foot barge was "watercraft" within policy exclusion). We also note that there was no definition of "watercraft" contained within the Policy. Moreover, the operation of the crane, which could be assembled not only on a barge but on shore, would arguably require a separate analysis from that of the barge for purposes of the application of the exclusion. See Ohio Casualty Ins. Co. v. Hartford Accident & Indem. Co., 148 Cal.App.3d 641, 196 Cal.Rptr. 164, 167 (3 Dist.1983) ("Where two such separate and independent risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy."). Finally, we note that Soper's business, for which he purchased the business liability policy, was a watercraft machinery repair shop. Thus, there would be little coverage if Consolidated's theory were followed.
 
 
 11
 Clearly, there is ambiguity in the word watercraft. It was never defined in the Policy and could include a barge with a crane on it but did not necessarily do so. Certainly, the crane could be viewed as a piece of equipment that was operated separately from a barge on some occasions and the mere fact that it was attached to a barge would not make the entire piece of equipment a watercraft. Construing the ambiguity against the insurer, we conclude that Mayerhofer's claim was within the Policy's coverage, and did not fall within the Watercraft Exclusion Clause.
 
 III.
 
 12
 The next question is whether Consolidated's breach of the duty to defend under these circumstances justified an award exceeding the $500,000 policy limit. The district court awarded Mayerhofer the entire amount of the stipulated judgment, plus interest. In so doing, the court stated that as Consolidated wrongfully refused to defend and refused to accept a reasonable settlement offer, it assumed the risk that it would be held liable for all damages resulting from the refusal, including the amount of the judgment exceeding the policy limits.
 
 
 13
 A breach of the duty to defend, coupled with a rejection by the insurer of a reasonable settlement offer within policy limits, may obligate the insurer to pay more than its policy limits. Samson v. Transamerica Ins. Co., 30 Cal.3d 220, 178 Cal.Rptr. 343, 353, 636 P.2d 32, 42 (1981). See also Johansen v. California State Auto. Ass'n. Inter-Ins. Bureau, 15 Cal.3d 9, 123 Cal.Rptr. 288, 290, 538 P.2d 744, 746 (1975) ("[I]nsurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits."). It is undisputed that "California law imposes upon a liability insurer a duty to accept reasonable settlement offers by third party victims within the policy limits." San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 704 (9th Cir.1984) (citing Samson v. Transamerica Ins. Co., 30 Cal.3d 220, 178 Cal.Rptr. 343, 636 P.2d 32 (1981); Murphy v. Allstate Ins. Co., 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976)). Moreover, California law mandates that when an insurer fails to accept a reasonable settlement offer within policy limits because it "believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits." Samson, 178 Cal.Rptr. at 353, 636 P.2d at 42 (citations and internal quotations omitted). This duty does not require, however, a liability insurer to accept the settlement offer when there is no risk to the insured. San Jose, 723 F.2d at 704.
 
 
 14
 Here, following Consolidated's withdrawal of its defense of Soper, Soper entered into a stipulated default judgment with Mayerhofer in the amount of $1 million, which was reasonable in light of the serious injury sustained. In exchange for Mayerhofer's covenant not to execute on the judgment, Soper assigned all his rights and interest against Consolidated to Mayerhofer.[2] On February 23, 1988, Mayerhofer tendered a settlement offer of $500,000, the amount of the policy limit, to which Consolidated never responded.
 
 
 15
 Consolidated contends that it had no obligation to Soper to settle Mayerhofer's claim against Soper after Soper entered into a stipulated judgment and became insulated from loss by the covenant not to execute. Consolidated reasons that it had no duty to accept a settlement offer within policy limits because Soper had no remaining financial interest in the outcome.
 
 
 16
 We do not agree. Consolidated's failure to settle for the policy limits leaves Soper with a judgment against him for $1 million. Under California law, Consolidated's act of rejecting Mayerhofer's settlement offer was a breach of its duty of good faith and fair dealing owed to Soper. Consolidated was thereafter obligated for the full amount of the judgment. We note that there is some peculiarity in the fact that Soper himself was seemingly not at risk to pay the judgment because of the covenant not to execute. He was left, however, with a judgment against him that could have collateral adverse effects in several respects, including on his future credit. See, e.g., Critz v. Farmers Ins. Group, 230 Cal.App.2d 788, 41 Cal.Rptr. 401, 410 (3 Dist.1964) (a covenant not to execute is not a release and, therefore, did not blot out the personal judgment against the insured nor extinguish his claim against the insurance company). A covenant not to execute does not fully protect the insured, his credit may be impaired and he may be unable to enter certain business transactions. See Ivy v. Pacific Auto. Ins. Co., 156 Cal.App.2d 652, 320 P.2d 140, 147-48 (1 Dist.1958). It is clear then that Soper's interests remained at risk notwithstanding the covenant not to execute. Consolidated wrongfully refused to defend Soper and subsequently rejected a reasonable settlement offer within policy limits. Under these circumstances, California law requires the carrier to pay the full amount of the judgment, including the amount in excess of policy limits.
 
 IV.
 
 17
 Finally, we review the district court's award to Mayerhofer of accrued interest beginning from the date of the stipulated judgment. Pursuant to California Civil Procedure Code § 685.010(a),[3] the district court awarded Mayerhofer $123,835.39 in accrued interest calculated from the time that the stipulated judgment was entered. Consolidated, while citing no authority, maintains that the district court was in error when it made this award.
 
 
 18
 In John Siebel Assoc. v. Keele, 188 Cal.App.3d 560, 233 Cal.Rptr. 231, 233 (2 Dist.1986), the debtor argued that stipulated judgments were not judgments rendered and, therefore, they were not subject to the constitutional interest rate.[4] The court held that judgments entered by courts on the stipulation of the parties have the same effect as actions tried on the merits. Id. Accordingly, a stipulated judgment bears interest at the statutory rate of 10%. See id.
 
 
 19
 Under certain circumstances, California courts will hold the insurer liable for the entire judgment, including the amount in excess of policy limits. This amount would include the interest that accrued at the statutory rate of 10% per annum. In this case, the district court awarded Mayerhofer the accrued interest on the stipulated judgment at the rate of 10% per annum.
 
 
 20
 Accordingly, we affirm the judgment of the district court awarding Mayerhofer the amount of the stipulated judgment plus accrued interest.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The Policy provided in pertinent part:
 Consolidated ... subject to the limits of liability, the conditions and exclusions contained in the policy, agrees:
 Coverages A and B (Business Liability):
 
 
 [1]
 to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
 A. bodily injury ... sustained by any person....
 Further, the Policy provides coverage for bodily injury if liability arises within the meaning of a "product hazard." The policy defines "Products Hazard" as:
 [L]iability of an insured for damages because of bodily injury or property damage arising out of goods or products manufactured, sold, handled or distributed by the Named Insured ... if the occurrence or accident occurs after physical possession of such goods or products has been relinquished to others by the Named Insured ... and such occurrence or accident occurs away from premises owned, rented or controlled by the Named Insured....
 There is an exclusion clause, however, the relevant portion of which states:
 None of the Insuring Agreements in this policy applies:
 (b) to the ownership, maintenance, operation, use, loading or unloading of ... (2) watercraft, if the occurrence or accident takes place away from premises owned by, rented to or controlled by the insured. This exclusion does not apply to operations performed by independent contractors; or to any watercraft under 26 feet in length provided such watercraft is neither owned by the named insured nor being used to carry persons or property for a charge. (Supplemental Endorsement.)
 
 
 [2]
 California courts consistently hold that "an insured breaches no duty to the insurance company when he assigns his rights against the company to the injured plaintiffs in return for a covenant not to execute." See Samson, 178 Cal.Rptr. at 356, 636 P.2d at 45 (and cases cited therein)
 
 
 [3]
 Section 685.010(a) provides that: "Interest accrues at the rate of 10 per cent per annum on the principal amount of a money judgment remaining unsatisfied."
 
 
 [4]
 Section I, Article XV, of the California Constitution provides that interest on "a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum." As discussed, the California Legislature set the post-judgment interest rate at 10% per annum "on the principal amount of the money judgment remaining unsatisfied." See Calif.Civ.Pro.Code § 685.010(a) (West 1987)