## TVN ENTERTAINMENT CORPORATION, Plaintiff—Appellant,

v.

## GENERAL STAR INDEMNITY COMPANY, a Connecticut corporation, Defendant—Appellee.

No. 02–55256.

D.C. No. CV–01–01500–DT.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 2003.

Decided March 4, 2003.

Before MESKILL,* FERGUSON, and BERZON, Circuit Judges.

MEMORANDUM**

Plaintiff-appellant TVN Entertainment, Inc. (TVN) appeals from a district court order granting defendant-appellee General Star Indemnity's (General Star's) motion for summary judgment. We agree with the district court and affirm.

General Star issued TVN an employment practices liability insurance policy (Policy) that provided coverage for losses TVN suffered because of "wrongful employment acts" such as discrimination, defamation, harassment and breach of an implied employment contract. The Policy excluded from coverage (1) "damages determined to be owing under a written or express contract of employment" and (2) losses in the form of "commissions, bonuses, profit sharing or benefits pursuant to a contract of employment." While the Policy was in effect, TVN terminated one of its employees, Michael Wex (Wex), who responded by taking TVN to arbitration. In the arbitrator's final award, he ruled TVN had "materially breached the express and implied terms of [Wex's] Employment Agreement and the covenant of good faith and fair dealing" and concluded that Wex was entitled to $13,218,588.63 in damages "proximately caused by [TVN's] breach of the Employment Agreement." When General Star refused to indemnify TVN for Wex's arbitration award, TVN brought this action alleging, among other things, that General Star had failed to fulfill its obligations under the Policy. In response, General Star filed a counterclaim seeking a determination that it had no duty to indemnify TVN in the underlying arbitration.

On appeal, TVN argues that the Policy's exclusionary clauses are unclear and inconsistent with coverage provisions found elsewhere in the Policy. It maintains that these ambiguities and inconsistencies should be construed in its favor as the insured. *See Cont'l Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1079 (9th 1985) (noting that exceptions to performance "must be clearly stated to apprise insured of [their] effect"). General Star counters that TVN's arguments ignore the objectively reasonable interpretation of the Policy's plain language. Like the district court, we agree with General Star and find TVN's contention unpersuasive.

■ The Policy expressly states that it does not cover "Loss" in the form of "commissions, bonuses, profit sharing, or benefits pursuant to a contract of employment." Where, as here, the policy language "is clear and explicit, it governs." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). We conclude that Wex's stock options, which were granted to Wex through his employment agreement in a paragraph separate from that describing his annual salary, come within the Policy's exclusionary language. *See In re Marriage of Hug,* 154 Cal.App.3d 780, 785, 201 Cal.Rptr. 676 (1984) (noting that, in certain instances, "stock options fall into the same category as ... fringe benefits ... and profit-sharing arrangements"); *Webster's New World College Dictionary* 568 (4th ed. 2000) (defining "fringe benefit" as "any form of

* The Honorable Thomas J. Meskill, United States Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

employee compensation provided *in addition* to wages or base salary, such as a pension, insurance, coverage, vacation time . . . .") (emphasis added); *The American Heritage Dictionary of the English Language* (4th ed. 2000) (defining "bonus" as "[a] sum of money or an equivalent given to an employee *in addition* to the employee's compensation") (emphasis added).[1]

■ Similarly, the Policy language excluding coverage for "damages determined to be owing under a written or express contract of employment," viewed in the context of the policy as a whole, also is unambiguous. *See Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. Although the arbitrator amended his final award (at TVN's request) to reflect a breach of the covenant of good faith, he did not alter any of his factual findings. In determining the amount of award Wex would receive, the arbitrator ruled that Wex was entitled to "damages proximately caused by [TVN's] breach of the Employment Agreement." The award, consequently, tied Wex's damages to the different forms of compensation provided for under Wex's express written contract. As such, the award falls squarely within the Policy's unambiguous language excluding indemnity for damages "owing under a written or express contract of employment."

**AFFIRMED.**

Judge BERZON, concurring in part and dissenting in part.

I respectfully dissent. Although General Star argues that the policy excludes damages caused by any breach of an employment contract, the policy nowhere so states.

The relevant exclusion states:

**Inappropriate Employment Decision** shall not include damages determined to be owing under a written or express contract of employment or obligation to make payments, including but not limited to severance payments, in the event of the termination of employment, however, this provision does not apply to defense costs.

The sentence is ambiguous. First, it is not grammatical: It attempts to delineate certain types of "decisions" by reference to certain types of "damages." More importantly, it is unclear whether the modifying phrase "to make payments . . . in the event of the termination of employment" modifies only the term "obligation" or modifies both the term "obligation" and the term "contract of employment." If the latter was intended, then the exclusion relating to express contracts is limited to "damages determined to be owing under a written or express contract of employment . . . in the event of the termination of employment." As such, the exclusion pertains only to contract provisions specifically targeted at payments made "in the event of termination"—that is, severance pay, liquidated damages, golden parachute payments, and the like. Because the pertinence of the modifying phrase is at least ambiguous, the exception must be construed against General Star. *Consol. Am. Ins. Co. v. Mike Soper Marine Servs.,* 951 F.2d 186, 188 (9th Cir.1991) ("While a court is prohibited from adopting a

---

1. Because we recognize that the categorization of stock options requires "reference to the facts of each particular case [in order] to reveal the features and implications of a particular employee stock option," 154 Cal. App.3d at 784, 201 Cal.Rptr. 676; *accord Oracle Corp. v. Falotti,* 187 F.Supp.2d 1184, 1200 (N.D.Cal.2001), *aff'd on different grounds,* 319 F.3d 1106 (9th Cir.2003), we take no general position on the classification of stock options as benefits versus compensation. We only hold that they were unambiguously excluded from the Policy at issue in this case.

strained or absurd interpretation in order to create an ambiguity, if ambiguity or uncertainty does exist, it must be resolved against the insurer.")

I agree, however, that Wex's stock options come within the policy's exclusionary language. Although I do not believe that stock options are properly categorized as "benefits," stock options are a form of "profit sharing" and therefore excluded from the Policy's definition of "Loss." I would therefore hold that General Star must indemnify TVN only for that portion of the arbitration award which did not relate to stock options.