698 F.2d 294
 Charles L. ISON; Daniel C. Ott; Denver Roof, Plaintiffs-Appellees,
v.
Homer ROOF, Defendant-Appellee,
Ronald Brammer; Francis Elkhorn Coal Sales, Inc.; Louis
Pineur, President, Defendants,
and
Greenbrier Coal Corporation; Parkway Processing, Inc.,
Defendants-Appellants.
Great Southwest Fire Ins. Co., Defendant-Appellant.
 Nos. 81-3199, 82-3017.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 22, 1982.
Decided Jan. 28, 1983.
 
 Roy W. Short, Edmund Lee (argued), Cincinnati, Ohio, for Great Southwest Fire Ins. Co.
 Edward J. Utz (argued), Cincinnati, Ohio, for defendants-appellants.
 Louis F. Gilligan (argued), Richard L. Creighton, Jr., Cincinnati, Ohio, Thomas G. Jarrell, Segal, Isenberg, Sales, Stewart & Nutt, Louisville, Ky., for plaintiffs-appellees.
 Bruce B. McIntosh (argued), Ronald D. Major, Beall, Hermanies & Bortz, Cincinnati, Ohio, for Homer Roof.
 Before MARTIN, Circuit Judge, BROWN, Senior Circuit Judge, and BERTELSMAN,* District Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 This is an appeal of a decision of the district court, Honorable David S. Porter, holding the owners and operators of coal loading equipment, which extended from the bank and over the Ohio River, liable to the owner of a pleasure craft and his guests. The craft struck the equipment, causing personal injuries and property damage. Following such entry of judgment, the district court, in a supplementary proceeding, also determined that the liability insurance carrier whose policy had been issued to one of the owners and operators of the coal loading equipment must pay the judgment rendered against its insured. The owners and operators have appealed the judgment against them, and the insurance company has appealed the judgment against it. We affirm the judgments of the district court.
 
 BACKGROUND
 
 2
 The facts of this case, as found by the district court and supported by substantial evidence, insofar as it is necessary to relate them in disposing of this appeal, may be briefly set out.
 
 
 3
 On the night of the accident, Homer Roof, the owner of the pleasure craft, was operating it from the flying bridge which was about ten feet above the waterline. On board as his guests were Charles L. Ison, Daniel C. Ott and Denver Roof. Visibility, due to foul weather, was poor. Defendants Greenbrier Coal Corporation (Greenbrier) and Parkway Processing, Inc. (Parkway) had installed a coal loading facility on the Ohio bank of the river at Ironton. In this connection, a work barge was used on which was located a boom that supported a conveyor that extended out over the river about eighteen feet. The barge was secured to the bank with cable and, prior to the accident, it had been damaged, had taken on considerable water and had partially sunk, and the inboard side had been pulled on to the bank of the river by use of a tractor. There were no lights on the barge or the conveyor.
 
 
 4
 As Homer Roof proceeded downstream on the Ohio side of the river, he moved closer to the bank to avoid a tow proceeding upstream. He had consumed some intoxicants but was not intoxicated. Just prior to the accident, his search light picked up the unlighted work barge and then the boat ran under the conveyor and boom, the flying bridge striking them. The boat caught fire, and Homer Roof and his guests abandoned it, making their way to the river bank. The boat sank and the occupants suffered personal injuries.
 
 
 5
 Ison, Ott and Denver Roof brought personal injury actions in admiralty in the district court for the Southern District of Ohio against Homer Roof and Greenbrier and Parkway. Homer Roof filed a cross-claim against Greenbrier and Parkway to recover for his personal injuries and property damage. The district court, applying the admiralty rule of comparative negligence, determined that Homer Roof's negligence in not keeping a proper lookout caused ten percent of the damages and that the negligence of Greenbrier and Parkway, in not maintaining a light on the barge and conveyor, caused ninety percent of the damages. On this basis, the district court awarded judgments in favor of Ison, Ott and Denver Roof for their personal injuries, ten percent against Homer Roof and ninety percent, jointly and severally, against Greenbrier and Parkway. It also awarded a judgment to Homer Roof for his personal injuries and property damage (less ten percent) against Greenbrier and Parkway.
 
 
 6
 Thereafter, based on the same factual record, a supplemental complaint was filed by Ison, Ott and the Roofs against Great Southwest Fire Insurance Co., the liability carrier of Parkway, pursuant to OHIO REVISED CODE Sec. 3929.06, to have the court determine that the coverage of the policy was applicable and that therefore the insurance company was required to pay the judgments against Parkway. Following additional briefing, the district court held that the coverage was applicable and that Great Southwest must pay these judgments.
 
 
 7
 Greenbrier and Parkway have appealed the judgments against them, Great Southwest has appealed the judgment against it, and the appeals were consolidated in this court.
 
 
 8
 * Although it was conceded in the district court that these claims for personal injuries and property damage were properly a subject of admiralty jurisdiction, Greenbrier and Parkway asserted for the first time on appeal that this was not so and that Ohio law, rather than the admiralty doctrine of comparative negligence, should have been applied. We do not agree. The accident occurred on a navigable stream, and while Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), holds that this fact alone is not enough to support admiralty jurisdiction, it also holds that admiralty jurisdiction is present if "the wrong [bears] a significant relationship to traditional maritime activity." Id. at 268, 93 S.Ct. at 504. Here the wrong did bear such a relation. Not only were the injured parties traveling by boat on a navigable stream, but also the danger created by this unlighted conveyor protruding from the work barge could only be to craft moving on this navigable stream. Moreover, Foremost Insurance Co. v. Richardson, --- U.S. ----, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), supports the proposition that admiralty law applies to pleasure boats as well as commercial craft. We therefore conclude that admiralty jurisdiction was present and that therefore admiralty law applied.
 
 II
 
 9
 Greenbrier and Parkway concede (or at least do not contend otherwise) that if this is properly an admiralty case, the rule of comparative negligence applies.
 
 
 10
 The district court determined that: "Because of its partially sunken condition, the barge was, at the time of the accident, a wreck obstructing navigable waters [citation omitted]. As such, its owners were obligated by statute and regulations to mark it with lights at night."
 
 
 11
 The finding that the partially sunken barge was a wreck and was obstructing navigable waters is supported by substantial evidence.
 
 
 12
 In support of its conclusion that the owners of this barge were obligated to mark it with lights at night, the district court cited 33 U.S.C. Sec. 409 and 33 C.F.R. Sec. 64.01.
 
 
 13
 33 U.S.C. Sec. 409 provides:Sec. 409. Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels
 
 
 14
 It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.
 
 33 C.F.R. Sec. 64.01-1(a) provides:
 
 15
 Subpart 64.01--Marking of Sunken Vessels or Other Obstructions
 
 
 16
 Sec. 64.01-1 General.
 
 
 17
 (a) The owner of a vessel sunk in the navigable waters of the United States who fails to mark the wreck immediately for the protection of navigation with a buoy or daymark during the day and a light at night may, in addition to being in violation of 33 U.S.C. 409, be liable for resulting damage to the public. The owner of a sunken obstruction other than a vessel which creates an obstruction to the navigable capacity of any of the waters of the United States may, in addition to being in violation of 33 U.S.C. 403, be liable for resulting damage to the public.
 
 
 18
 Thus, the conclusion that Greenbrier and Parkway were obligated to mark this partially sunken barge with a warning light is correctly grounded in the statute and regulation.
 
 
 19
 The district court further concluded that the violation by Greenbrier and Parkway of this statute and regulation required that liability be imposed upon them, citing The Pennsylvania, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1874) and Skidmore v. Grueninger, 506 F.2d 716, 721 (5th Cir.1975). These cases hold that when a vessel is in violation of a statute intended to prevent collision at the time of the collision, the burden is on that vessel to prove, not only that its violation was not a cause of the collision, but also that it could not have been a cause of the collision.
 
 
 20
 Thus, we agree with the district judge that there was ample basis to impose liability on Greenbrier and Parkway because of their failure to maintain a light at night on this partially sunken barge that created a hazard to traffic in this navigable stream. We further conclude that the district court's allocation of fault of ten percent to Homer Roof and ninety percent to Greenbrier and Parkway is supported by substantial evidence.
 
 
 21
 Accordingly, we affirm the judgments against Greenbrier and Parkway.
 
 III
 
 22
 Turning now to Great Southwest's appeal of the decision holding it liable to pay the judgment against its insured, Parkway, it is the contention of the insurance carrier that this was error because the district court found Parkway liable on the theory that the work barge was a "vessel" and because its policy excluded coverage as to injury or damage arising from maintenance or operation of "watercraft."
 
 
 23
 The declarations in the policy provide that the policy insured "Coal dock operation by means of mechanical apparatus...." The exclusion on which Great Southwest relies provides:(e) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
 
 
 24
 (1) any watercraft owned or operated by or rented or loaned to any insured, or
 
 
 25
 (2) any other watercraft operated by any person in the course of his employment by any insured;
 
 
 26
 but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named insured....
 
 
 27
 Great Southwest recognizes the generally accepted rule that any ambiguity must be construed in favor of the insured; its position is that there is no ambiguity here.
 
 
 28
 The district court pointed out that, while liability against Parkway was determined under the statute and regulation on the theory that the work barge with boom and conveyor was a wrecked or sunken vessel, it does not follow that such was a "watercraft" within the meaning of the policy exclusion. The policy, by the terms of its declaration, was intended to cover risks arising from operation of a coal docking facility, and this work barge and conveyor were an integral part of such facility. Thus, as the district court recognized, the declaration indicated an intent to cover the "operation" which would include the work barge and conveyor. The work barge was in the same condition at the time the policy was issued as it was at the time of the accident. Moreover, the work barge was used as a base for the conveyor and was not intended to be used and was not being used as a transportation vessel. Thus, the district court found, this work barge with the conveyor was not a "watercraft" within the meaning of the policy exclusion.
 
 
 29
 The district court determined, alternatively, that because the work barge had been pulled partially on the bank, the exclusion did not apply since by its terms it is not applicable to "watercraft while ashore."
 
 
 30
 We agree with the district court's reasoning and therefore agree with its conclusion that the Great Southwest policy covered this judgment.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation