**Veronica AYERS, Plaintiff,**

v.

**C & D GENERAL CONTRACTORS, et al., Defendants.**

**Civil Action No. 3:01–CV–48–H.**

United States District Court,
W.D. Kentucky,
At Louisville.

Dec. 6, 2002.

---

Karl Truman, Jeffersonville, IN, Isaac H. Soileau, Jr., Logan & Soileau, New Orleans, LA, for plaintiff.

J. Denis Ogburn, Alber & Crafton, Marvin L. Coan, Hummel & Coan, Alice B. Herrington, Woodward, Hobson & Fulton, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This case requires the Court to interpret a web of three insurance contracts purchased by C & D General Contractors ("C & D"). Plaintiff sued C & D for its fault in causing the death of her husband while at work. She sued C & D's insurers, American States and American Economy Insurance Companies (collectively "American States"), for a declaration that their insurance policies covered the damages she anticipated recovering. The parties have now filed cross motions for summary judgment on the issue of whether C & D's three insurance contracts cover Plaintiff's claim. After considering their memoranda and hearing oral argument, the Court is able to resolve most of their disputes.

### I.

Most of the material facts are undisputed. C & D contracted with Tartan's Landing Marina, located on the Ohio River in Goshen, Kentucky, to replace the old styrofoam dock supports with new ones. To complete this task, C & D purchased a 25–foot by 75–foot barge and a Grove hydraulic truck crane from T & M Cranes, Inc. C & D owner David Stone placed the truck crane on the barge in order to lift the dock, which was approximately 1500 pounds, three to four inches high. This allowed C & D's workers to get underneath the dock and remove the old supports. As part of this project, C & D hired Stephen Ayers ("Ayers"), age 34, to help with the replacement process. The parties dispute whether C & D hired Ayers as a temporary employee or as a permanent employee.[1]

On March 15, 2000, Stone was operating the crane while Ayers and two other indi-

---

1. This fact is important to the resolution of the various insurance coverages. To determine it, will require an evidentiary hearing.

viduals were working to replace the supports underneath the barge. Around 3:40 p.m. the crane disconnected from its base causing it to crash and collapse on the dock beneath it. When the crane fell, Ayers was pinned underwater between the crane's boom and the dock. The massive weight of the boom made it impossible for Ayers' coworkers to free him. At 6:15 p.m., Ayers was brought to the surface and pronounced dead.

Following the accident, Veronica Ayers, the victim's widow and Plaintiff in this case, filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act with the United States Department of Labor's Office of Worker's Compensation Programs. A settlement agreement was reached and approved by the Department of Labor through which C & D paid the Plaintiff a discounted lump sum settlement of $121, 843.

Additionally, on January 2, 2001, Plaintiff, for herself and on behalf of her husband, filed this tort action against C & D and its insurers, American States,[2] for negligence under general maritime law and the Admiralty Extension Act.[3] On May 8, 2002, Defendants moved for summary judgment arguing that the insurance contracts do not provide coverage. Contemporaneously, on June 10, 2002, Plaintiff filed her own cross-motion for summary judgment as well as a motion requesting that this Court enter a $1 million consent judgment against C & D.[4]

This case calls for basic contract interpretation. Defendants argue that, if the Court parses the language in each individual insurance policy, a series of exclusions, exceptions and definitions bar any insurance coverage applicable in these circumstances. Plaintiffs contend that the three contracts, though independent and containing their own not always coherent definitions, were intended to operate in such a unified way that coverage should

2. Initially Safeco Insurance Company was named as the insurer for C & D but was subsequently replaced by American Economy and American Insurance in a September 5, 2001 Order of this Court. Additionally, Plaintiff also filed against Accordia of Southern Indiana, the insurance company which sold C & D the polices at issue in this case. In a January 14, 2002 Order, this Court granted Accordia's motion to bifurcate Plaintiff's claim against Accordia until the issue of the insurance company's liability was resolved.

3. The Longshore and Harbor Workers' Compensation Act establishes a comprehensive federal worker's compensation scheme which holds employers liable, irrespective of fault, for securing the payment of the prescribed compensation to qualified maritime employees injured in the course of their employment. 33 U.S.C. § 904. This liability of employers is termed "exclusive and in place of all other liability of such employer to the employee." Id. § 905(a). Section 905(b) of the Act authorizes certain covered employees to bring an action against the vessel as a third party if their employment injury was caused by the negligence of the vessel. Consistent with this text, the Supreme Court has interpreted section 905(b) to permit covered employees to bring third-party negligence actions against their employer qua vessel owner. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 530–32, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983) (asserting that if Congress had intended to exempt employer-vessel owners from negligence suits, then the sentence in section 905(b) barring recovery from them where fellow longshore workers caused the injury would have been unnecessary). Section 905(b), however, is not a grant of subject matter jurisdiction; rather § 905(b) permits a cause of action under general maritime law when admiralty jurisdiction already exists.

4. In the consent judgment, C & D consented to assign Plaintiff any claim they may have against American States. In exchange, Plaintiff agreed not to execute the judgment against C & D, but instead to pursue the coverage and related issues against the other defendants. Pending motions also dispute the legality of such a consent judgment. The Court does not address that issue at this time.

logically exist. The accident occurred in Goshen, Kentucky. Kentucky law will therefore apply.[5] In Kentucky, the construction of insurance contract provisions comprise questions of law for the court, unless disputed facts are involved. *Hanover Ins. Co. v. American Eng'g Co.*, 33 F.3d 727, 730 (6th Cir.1994); *Perry's Adm'x v. Inter–Southern Life Ins. Co.*, 254 Ky. 196, 71 S.W.2d 431 (1934).

## II.

Defendants first claim that the CGL policy contains two exclusions which independently bar Ayers from coverage. These provisions are absolute exclusions. A determination that either applies will mean that the entire CGL policy does not provide coverage.

### A.

■ The CGL Policy contains an "employee" exclusion, which is a standard provision in all such policies. That provision excludes from CGL coverage all bodily injury to "an *employee* of the insured arising out of and in the course of: (a) employment by the insured; or (b) performing duties related to the conduct of the insured's business." CGL § 1.2(e)(1) (emphasis added). The definition of "employee" in turn states, "Employee includes a 'leased worker.' Employee does not include a 'temporary worker.'" CGL § V.5.[6] Thus, whether or not the "employee" exclusion applies therefore turns on whether Ayers was a regular employee and thus included within the exclusion, or a "temporary worker," and therefore not within the exclusion.[7]

Unfortunately, the less than perfect draftsmanship of the "temporary worker" definition, complicates the Court's task. The CGL policy defines "temporary worker" as "a person who is furnished to you to substitute for a permanent 'employee' on

---

**5.** As this Court has previously stated, recent pronouncements by the Kentucky Supreme Court require the Court to construe the contract against the insurer, but not to do so in such a way that changes the purpose of the contract.

> An insurance policy is to be liberally construed in favor of the insured, if the language is ambiguous, and the policy is susceptible to more than one reasonable interpretation. Exclusions are strictly construed, and an exclusion must be clearly stated in order to apprise the insured of the limitation. However, these rules do not contravene the fact that the policy must receive a reasonable interpretation consistent with the parties' intent. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. Courts should not rewrite an insurance contract to enlarge the risk to the insurer.

> *Bituminous Cas. Corp. v. RPS Co.*, 915 F.Supp. 882, 883–84 (W.D.Ky.1996) (internal citations omitted); *see also Peoples Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 113 F.3d 629 (6th Cir.1997); *St. Paul Fire & Marine Ins. Co. v. Powell–Walton–Milward, Inc.*

870 S.W.2d 223 (Ky.1994); *Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky.1992).

**6.** The CGL does provide definitions for "leased worker" and "temporary worker" that are consistent with the distinction created in the "employee" definition. In addition to being someone hired from "a labor leasing firm," the definition of "leased worker" includes the pronouncement that the term "leased worker does not include a temporary worker." In full, the definition of "leased worker" is as follows:

> "Leased worker" means a person leased to you buy a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. Leased worker *does not include a temporary worker.*

CGL § V.10 (emphasis added).

**7.** The parties agree that Ayers was hired through a newspaper ad. He was therefore not a "leased worker" because there was no "labor leasing firm" involved—the quintessential qualification to being a "leased worker."

leave or to meet seasonal or short-term, workload conditions." CGL § V.19. Defendant focuses on two words within this definition and contends that Ayers must have been "furnished to" C & D to qualify for "temporary worker" status. Under this reading, however, short-term employees that respond to a newspaper advertisement are excluded from coverage, whereas short-term employees supplied by a temporary agency receive coverage. Such a literal interpretation ultimately changes the basic meaning of the contract by including some temporary employees and excluding others based on a seemingly illogical or, at the least, unexplainable distinction. The Court has struggled unsuccessfully to find the logic in such a distinction. Moreover, neither party has been able to provide any argument in favor of giving the phrase "furnished to you" the undue weight Defendant urges.[8] The Court holds, therefore, that the term "furnished to you" is too ambiguous to be given a literal interpretation. To give this phrase dispositive weight within the policy makes no sense whatsoever. Nevertheless, the purpose of the overall definition is clear. If an employee is hired to fill-in for a permanent employee on leave or to meet a short-term need, the CGL policy classifies that employee as a "temporary worker" and thus exempt from the cover-

age's exclusion for bodily injuries to an "employee."[9]

The parties disagree as to whether Ayers was, as a matter of fact, a "temporary worker." Plaintiff contends Ayers was clearly seasonal and relies on a deposition of C & D's corporate representative who stated that Ayers was one of several temporary workers engaged in seasonal work. (Pl.'s Mot. For Summ. J. at p. 12). In response, at oral argument Defendants stated that they had evidence of a phone conversation between Defendant's insurance adjuster and C & D's President which clearly shows that Ayers was not a temporary worker. Each side appears to have evidence supporting its side. The Court cannot resolve this issue without an evidentiary hearing.

**B.**

■ The second CGL exclusion bars coverage for bodily injury arising out of the ownership or use of a "watercraft" owned by the insured.[10] Unlike the term "employee," the term "watercraft" is not defined in this contract. Both parties dispute whether the term "watercraft" was intended to include a barge, like the one used in this case, within its scope. Kentucky law is clear that words in a contract are to be given their "ordinary meaning as

---

8. At oral argument, the Court gave both parties the opportunity to submit opposing memorandums on this issue. Defendant, though providing some discussion relating to a similar contract scheme where the term "employee" was *not defined*, ultimately concluded that "no specific explanation was found" to explain the significance of the phrase "furnished to you."

9. Construing the policy in this way is also consistent with two basic principles of contract law. First, under the "doctrine of reasonable expectations," ambiguities in exclusions should be resolved against the drafter in order to circumvent the technical, legalistic interpretation of terms in a way that limits

the benefits to the insured, in this case the employer of a potential temporary employee. *See Simon v. Continental Ins. Co.,* 724 S.W.2d 210, 213 (Ky.1986). Second, in cases where an ambiguity is held to exist, that ambiguity must be resolved against the insurer. *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.,* 113 F.3d 629, 636 (6th Cir.1997).

10. In full, the watercraft exclusion states:

This insurance does not apply to ... Bodily injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. CGL § 1.2(g).

persons with the ordinary and usual understanding would construe them." *Transport Ins. Co. v. Ford,* 886 S.W.2d 901, 904 (Ky.App.1994). The Court therefore begins by ascertaining the plain meaning of "watercraft."

Two sources of law are instructive. First, Kentucky courts often refer to dictionaries in order to determine the ordinary meaning of undefined contractual terms. *See, e.g., Com. v. Whitworth,* 74 S.W.3d 695, 700 (Ky.2002); *United States Fire Ins. Co. v. Kentucky Truck Sales, Inc.,* 786 F.2d 736, 739 (6th Cir.1986); *Weaver v. Nat'l Fidelity Insur. Co.,* 377 S.W.2d 73, 75 (Ky.1963). Random House Unabridged Dictionary defines "watercraft" as "(1) skill in boating or watersports, (2) any boat or ship, (3) boats or ships collectively." Second, consistent with this definition, the Sixth Circuit has held in a similar context that a "watercraft" is a moving vessel used for transportation. *Ison v. Roof,* 698 F.2d 294 (6th Cir.1983). In *Ison,* the Sixth Circuit relied on the fact that the insurance policy's purpose was to cover risks arising from the employer's coal docking facility, of which the barge was an integral part. *Id.* Thus, because the work barge was not used for transportation purposes, the Sixth Circuit concluded the dock barge was not encompassed in the general meaning of the term "watercraft." Id. *See also Consolidated American Insur. Co. v. Soper Marine,* 951 F.2d 186 (9th Cir.1991) (holding in a factually similar situation where a barge had a crane attached to it and subsequently caused an accident that the barge was clearly not within the scope of the undefined term "watercraft").

The present case raises no facts that distinguish it from these cases. The barge was not used for transportation during Ayers's employment, it merely enabled work underneath the docks. In accord with both the plain meaning as well as Sixth Circuit law on this same subject, the Court concludes the barge was not a "watercraft" and that the CGL "watercraft" exclusion is inapplicable.

### III.

■ Next the Court considers the scope of the Worker's Compensation/Employer's Liability ("WC/EL") Policy. As its title suggests, this policy has two parts. Part I provides coverage for payments made by an employer to an employee under Worker's Compensation Law. WC/EL § I.B. Part II covers other liabilities that an employer might have to an employee in tort for negligence that would not be included within the employee's worker's compensation rights. Plaintiff has already recovered the $121,843 due to her under Part I. The question now raised is whether Part II also applies.[11]

On its face, Part II does not provide coverage in this case. Specifically, Part II contains an exclusion which states "This insurance does not cover ... bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901–950)." WC/EL § II.C(8). Because this claim is based on a cause of action established by 33 U.S.C. § 905(b), all parties agree the exclusion would apply were it not for an endorsement to the WC/EL policy which Plaintiff contends nullifies this exclusion.[12]

**11.** To be clear, Part II allows an employee to recover against an employer for tortious injuries. Under § 905(b) of the LHWCA, employees may sue their employers in tort for injuries sustained as a result of the employer's negligence while acting also in its capacity as vessel owner. As a technical matter then, though it is true Plaintiff is suing the vessel owner, the Court finds that Part II nevertheless presumptively applies because Plaintiff is suing the employer for a tort in negligence independent of the worker's compensation claims settled under Part I.

**12.** The Longshore and Harbor Workers' Compensation Act Coverage Endorsement provides in relevant part:

On the other hand, Defendants argue that the endorsement was only intended to apply to Part I of the WC/EL policy and that any other interpretation will allow Plaintiff a double recovery.

Kentucky law provides that an endorsement becomes part of the insurance contract if attached to the policy. *Kemper Nat'l Insur. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 875 (Ky. 2002). Endorsements affixed to an insurance policy are to be read with and harmonized with the provisions of the policy; in the event of any conflict between the endorsement and the policy, the endorsement prevails. *Id.* Here, the endorsement does not provide that it applies to one part of the policy. Rather, it is provided as an endorsement to the "Workers Compensation and Employers Liability Insurance Policy."

The interaction between the precise language used in the policy and the endorsement supports the view that the endorsement applies to the entire policy. The exclusion contained in Part II, excludes from coverage all:

> [B]odily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act, the Nonappropriated Fund Instrumentalities Act, the Outer Continental Shelf Lands act, the Defense Base Act, the Federal Coal Mine Health and Safety Act of 1969, and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

WC/EL § II.C(8).

The endorsement language is consistent with this specific exclusion because it carves out the Longshore and Harbor Workers' Compensation Act from this broader exclusion. For example, the endorsement applies "only to work subject to the Longshoremen's and Harbor Workers' Compensation Act." The endorsement specifically states it "does not apply to work subject to the Defense Base Act, the Outer Continental Shelf Lands Act, or the Nonappropriated Fund Instrumentalities Act." Though Defendants contend this endorsement only applies to Part I of the WC/EL policy, there is no mention of any of these acts—including the LHWCA—in Part I. It only makes sense that these other statutes would be excluded from the endorsement if the party that wrote the policy intended that the endorsement would apply to Part II. Moreover, as a practical matter, the Part II exclusion fits piece for piece with the endorsement so that it would be logical for a company like C & D to pay extra for such an endorsement where its work could be subject to LHWCA claims.

Both sides agree that because 29 U.S.C. § 905(b) permits Plaintiff's claim, it would arise, therefore, from work subject to the LHWCA. A common sense reading of the endorsement extends the policy's coverage in Part II to all "work subject to" to the LHWCA. Thus, under Kentucky law and a common sense reading of the relevant provisions, the endorsement should apply to the entire WC/EL policy and nullify the exclusion. As a matter of law, the Plaintiff is not excluded from coverage under this policy.

## IV.

Defendants contend that the Umbrella Policy provides no coverage for Plaintiff's

---

This endorsement applies only to work subject to the Longshoremen's and Harbor Workers' Compensation Act in a state shown in the Schedule. The policy applies to that work as though that state were listed in item 3.A of the Information Page. The definition of workers compensation law includes the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. Sections 901–950) and any amendment to that Act that is in effect during the policy period.

29 U.S.C. § 905(b) claim. Defendants make two independent challenges to the Umbrella Policy's scope. The Court considers those claims in turn.

## A.

■ As with the CGL policy, Defendants first argue that the Umbrella Policy's "employee" exclusion bars coverage for Ayers. The general exclusion language is virtually identical to that in the CGL policy. It states that the insurance does not apply to "bodily injury to ... an employee of the insured arising out of and in the course of employment by the insured or while performing duties related to the conduct of the insured's business." Umbrella § III.C.1. The pertinent related definitions state:

" 'Employee' includes a 'leased worker.' " Umbrella § VIII.F.

\*　　\*　　\*　　\*　　\*　　\*

" 'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker.' " Umbrella § VIII.J.

\*　　\*　　\*　　\*　　\*　　\*

" 'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." Umbrella, § V.III.S.

Ordinarily it would be a safe assumption that Ayers' coverage under the Umbrella Policy would track that under the CGL Policy. However, slightly different language within the Umbrella Policy definitions raises some doubt about that assumption.

Ayers clearly does not meet the "leased worker" definition. However, in its last sentence, that definition excludes from the subset of "leased workers" all "temporary workers." Thus, should the Court find that Ayers is not a "temporary worker," then he is classified as an "employee." [13] The Umbrella Policy bars coverage for him under its employee exclusion. Umbrella § III.C.1. This is consistent with the scheme established under the CGL policy. Nevertheless, the Court may find Ayers is a "temporary worker." If so, the enigmatic definition of "leased worker" presents the following quandary: are all "temporary workers" excluded from the definition of "employees" by virtue of their being excluded from the subset of "leased employees"?

After thoroughly examining the pertinent language, the Court concludes that the most reasonable interpretation does exclude "temporary workers" from the group defined as "employees." The Court has no doubt that these provisions are subject to more than one reasonable interpretation. However, it seems more likely and reasonable that "temporary workers" were excluded from the "leased worker" definition in order to be certain that "temporary workers" were not included as part of the definition of "employees." Without such a distinction, there would be no reason for a separate definition for temporary workers. Moreover, preserving the distinction between "temporary workers" and other "employees" is consistent with the entire contractual scheme.

In reaching this conclusion, the Court also applies "the battery of interpretive canons that the Kentucky Supreme Court has applied to insurance contracts" in cases where the language is ambiguous. *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629 (6th Cir.1997), *citing Eyler v. Nationwide Mut. Fire Ins.*

---

**13.** Because the definition of "temporary worker" is, in this case, identical to that in the CGL Policy, the legal analysis of that definition does not need repeating.

*Co.,* 824 S.W.2d 855, 859 (Ky.1992). Two points of law are particularly helpful. First, "Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured." *Peoples Bank,* 113 F.3d at 636. Second, more generally, because insurance contracts are drafted by the insurance companies, ambiguities in policies are to be resolved against the drafter. *Id.* Both of these principles suggest that the Umbrella Policy's exclusion for "employees," albeit ambiguous, should be construed in favor of the Plaintiff. The Plaintiff did not draft the contract and, furthermore, would be excluded from coverage based on a broad—rather than narrow—construction of the exclusion. To do so creates an unexplainable inconsistency with the underlying CGL Policy. The Court thus finds the "employee" exclusion in the Umbrella Policy does not include "temporary workers."

### B.

■ Last, the Court considers whether a "watercraft" exclusion in the Umbrella Policy should apply and, if so, whether an endorsement overrides the watercraft exclusion. In this case, unlike the CGL policy, the Court has the benefit of a definition for the term "watercraft." That definition states, " 'Watercraft' means a vehicle designed to transport persons or property in or on water." Umbrella § III.D. The parties do not dispute that, based on this definition, the barge is a "watercraft" for the purpose of the Umbrella Policy. The injury is thus excluded from coverage and the Court therefore focuses on the scope of the endorsement attached to the Umbrella Policy.

In relevant part, the Watercraft endorsement states that "Except to the extent that coverage is provided by 'Scheduled underlying insurance,' this policy does not apply to any claim, loss or 'suit' arising out of the [use] of any 'watercraft.' " The

Umbrella Policy, as a practical matter, extends coverage to an insured if there are applicable underlying policies. As a matter of law, the Court has found that the WC/EL Policy applies and that, following a factual determination, the CGL Policy may also apply. This establishes that "Scheduled underlying insurance" exists and that the endorsement will apply, effectively overriding the "watercraft" exclusion. The Umbrella Policy thus provides coverage to the facts in this case.

### V.

For the reasons set forth above, the Court finds that Plaintiff's husband was involved in an accident for which the WC/EL Policy provides coverage. Furthermore, as a matter of law the Court concludes that a "temporary worker" is not an "employee," and therefore is also covered by the CGL and Umbrella Policy. The Court will hold an evidentiary hearing to determine whether Ayers was a temporary worker within the meaning of the CGL and Umbrella Policies.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

The parties have filed cross-motions for summary judgment. The Court has reviewed the evidence and has filed a Memorandum Opinion. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Court will set an evidentiary hearing to determine whether Ayers is a "temporary worker" as defined in those policies consistent with the accompanying Memorandum Opinion.

IT IS FURTHER ORDERED that on all remaining issues, Defendant's motion for summary judgment is DENIED; Plaintiff's motion for summary judgment is

SUSTAINED; and, therefore, Plaintiff is entitled to coverage under Part II of the WC/EL Policy.