NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0113n.06
Filed:  February 11, 2005

No. 04-5134

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NEVER TELL FARM, LLC,                    )
                                         )
Plaintiff-Appellant,                     )     ON APPEAL FROM THE UNITED
                                         )      STATES DISTRICT COURT FOR THE
v.                                       )     EASTERN DISTRICT OF KENTUCKY
                                         )
AIRDRIE STUD, INC., and                  )
BLOOMING HILLS FARM, INC.,               )
                                         )
Defendants-Appellees.                    )

**Before: GILMAN and SUTTON, Circuit Judges; and McKEAGUE, District Judge.***

**McKEAGUE, District Judge.**  This action arises out of the sale of a thoroughbred horse.

At the time of the sale, the horse was owned by a syndicate, consisting of 40 fractional interests, or

shares.  The owner of one of the shares objected to the sale, but its exercise of its "first right to

purchase" under the Syndicate Agreement was deemed untimely and rejected by the Syndicate

Manager.  In a complaint for specific performance and damages, the aggrieved shareholder alleged

that the Syndicate Manager violated the terms of the Syndicate Agreement.  The district court

dismissed the complaint for failure to state a claim upon which relief can be granted.  This appeal

followed.  For the reasons that follow, we reverse and remand.

_____

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan,
sitting by designation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

In September 2003, the stallion "YOU AND I," retired from active training and racing, was owned by a syndicate, consisting of 40 fractional interests, or shares, each share representing a 2½ percent co-ownership interest.  Management of the syndicate was governed by a Syndicate Agreement.  JA 14-24.  Among other things, the Syndicate Agreement defined the rights and obligations of the co-owners, provided for breeding the stallion, and designated a Syndicate Manager to supervise and manage the breeding and to keep the books and records of account for the syndicate co-owners.  The Syndicate Manager was appellee Airdrie Stud, Inc. ("Airdrie"), which kept and managed YOU AND I near Midway, Kentucky.

On September 22, 2003, Brereton C. Jones, President of Airdrie and a syndicate member, received an offer from appellee Blooming Hills Farm, Inc. ("Blooming Hills"), of Clements, California, to purchase YOU AND I for the sum of $500,000, subject to certain express conditions.  JA 28.  In particular, the offer was contingent upon Blooming Hills securing sufficient control of YOU AND I to move the stallion to California – through purchase of sufficient shares to confer such control, or otherwise through agreement of the syndicate members.  While this "controlling interest" condition has not been otherwise defined, the parties appear to understand and agree that it required Blooming Hills to acquire at least 35 of the 40 syndicate shares.  In addition, the offer promised the sum of $50,000 to Airdrie, as well as lifetime breeding rights to Brereton Jones and two other persons.

---

[1] The fact summary is drawn from the allegations of plaintiff-appellant Never Tell Farm's complaint and exhibits attached thereto, which matters are accepted as true for purposes of evaluating the facial validity of the complaint.

Immediately after receipt of the offer, on September 23, 2003, Jones issued a memorandum to all syndicate members, advising that Airdrie, as Syndicate Manager, had received an offer to purchase YOU AND I, in his entirety or a controlling interest, at $12,500 per share. JA 25. The memorandum advised that Jones believed the offer to be fair and would elect to sell his shares, and requested co-owners to "vote" whether or not they wished to sell their shares upon the offered terms as soon as possible.

The following day, appellant Never Tell Farm, LLC ("Never Tell"), owner of one share, requested a copy of Blooming Hills' offer. JA 26. Airdrie faxed the copy to Never Tell on September 25, 2003. JA 27-28. By memorandum dated September 29, 2003, Airdrie advised Never Tell that 39 of 40 shareholders had voted to sell their shares. JA 29. Airdrie further advised that it expected to receive wire payment from Blooming Hills the next day and asked Never Tell to indicate as soon as possible whether it also intended to sell its share. *Id.* Never Tell responded on October 1, 2003, asking Airdrie to immediately transmit the notice required under § 4.1 of the Syndicate Agreement to permit exercise of Never Tell's first right to purchase. JA 30.

At this point, according to the allegations of Never Tell's complaint, negotiations between Never Tell and Airdrie ensued. Complaint ¶¶ 13-14; JA 8-9. Airdrie allegedly acknowledged that Never Tell retained a first right to purchase that had to be honored before YOU AND I could be sold to Blooming Hills. The negotiations are said to have involved the possibility that Never Tell would be paid a sum of money and receive a lifetime breeding right in exchange for declining to exercise its first right to purchase. When the negotiations broke down, Never Tell expressly exercised its first right to purchase by letter dated October 8, 2003. JA 31. Airdrie responded on October 14, 2003, informing Never Tell that it had failed to timely assert the right and that YOU AND I had been

3

shipped to Blooming Hills in accordance with the terms of the Syndicate Agreement. JA 33.

Never Tell then commenced this action for specific performance of the Syndicate Agreement, so as to allow it to acquire the other 39 shares in YOU AND I. Airdrie and Blooming Hills moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), contending Never Tell's own complaint makes it clear that the terms of the Syndicate Agreement were complied with.

At the heart of the dispute is § 4.1 of the Syndicate Agreement:

IV. TRANSFERS OF FRACTIONAL INTERESTS

4.1 <u>First Right to Purchase</u>. Fractional interests may be assigned and transferred, subject to the terms and conditions of this Agreement; provided, however, that the remaining co-owners shall have the first right to purchase any fractional interest or interests which any co-owner may at any time desire to sell, except for any sales at public auction as provided for in paragraph 4.5 below. Any co-owner who receives an *acceptable offer* shall notify the Syndicate Manager, in writing, stating the amount of the offer, the name and address of the proposed purchaser and the terms and conditions thereof. The Syndicate Manager, as agent for the remaining co-owners, shall have fifteen (15) days immediately thereafter to accept or reject the offer. Upon receipt of such notice, the Syndicate Manager or his designated representative shall immediately notify the remaining co-owners of such offer, and any co-owner who desires to purchase the offered fractional interest or interests upon such terms and conditions shall so notify the Syndicate Manager, in writing, within ten (10) days of the mailing of the notice by the Syndicate Manager. If more than one co-owner desires to accept such offer, then the Syndicate Manager shall determine the purchase thereof by lot. If the first right to purchase herein granted is not exercised, the co-owner desiring to sell the fractional interest or interests may then sell the same to the person originally making the offer upon the terms stated, subject to the provisions of this Agreement. All such transfers must be completed within sixty (60) days of the date on which the offer is approved by the Syndicate.

JA 19 (emphasis added). Both sides contend that this provision is unambiguous and should be enforced in accordance with its plain meaning. The dispute boils down to the question whether and when Airdrie, as Syndicate Manager, received notice that a co-owner had received an "acceptable offer" to purchase that co-owner's fractional interest or interests.

4

Never Tell insists that the September 22, 2003 Blooming Hills offer, contingent upon Blooming Hills securing a controlling interest in YOU AND I, was not then acceptable by any co-owner or by Airdrie as agent for the co-owners, because the assent of the owners of at least 35 shares was a condition precedent to acceptance. Hence, Never Tell argues, the September 23, 2003 memorandum could not have been the Syndicate Manager's notice of an acceptable offer and could not trigger the running of its 10-day period for exercise of its first right to purchase. Rather, notice that the offer had become "acceptable" is said not to have been given until September 29, 2003, when Airdrie advised Never Tell that 39 of 40 shareholders had voted to accept Blooming Hills' offer. Because Never Tell undisputedly asserted its first right to purchase within 10 days thereafter, on October 8, 2003, it maintains that it timely and effectively asserted the right.

Airdrie and Blooming Hills point out that the September 23, 2003 memorandum included co-owner Brereton Jones's statement that "I shall elect to sell my own shares and believe this to be a fair offer." JA 25. This was sufficient, they contend, to give Never Tell notice that an "acceptable" offer had been received by a co-owner. Because Never Tell did not exercise its first right to purchase within 10 days thereafter, it is said to have effectively waived its right to preempt the sale to Blooming Hills.

The district court agreed with Airdrie and Blooming Hills and dismissed Never Tell's complaint. The district court concluded that "the only notice Never Tell was entitled to receive was the notice of an offer to purchase." JA 40. To require the Syndicate Manager, the court reasoned, to issue a second notice after polling the other co-owners regarding their desire to sell, would be to improperly read a term into the parties' unambiguous agreement.

5

## II. ANALYSIS

### A. *Standard of Review*

Whether the district court properly dismissed Never Tell's complaint pursuant to Rule 12(b)(6) is a question of law subject to *de novo* review. *Arrow v. Federal Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004). Pursuant to Rule 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The reviewing court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of its allegations that would entitle it to relief. *Id.* Exhibits attached to the complaint, treated as part of the complaint "for all purposes," Fed. R. Civ. P. 10(c), are also to be read in the light most favorable to the plaintiff. Yet, the reviewing court is not obliged to accept alleged legal conclusions as true, nor is it required to draw unwarranted factual inferences in the plaintiff's favor. *Perry v. American Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003).

### B. *"Acceptable Offer" Requirement*

The Syndicate Agreement, a copy of which is attached to Never Tell's complaint, expressly provides that "[t]his Agreement, as well as all instruments pertaining to any right or interest created hereunder, shall be governed by and construed under the laws of the Commonwealth of Kentucky." JA 21. Under Kentucky law, a written instrument free of ambiguity will be enforced strictly according to its terms. The reviewing court must interpret unambiguous contract terms by assigning language its ordinary meaning without resort to extrinsic evidence. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). If, on the other hand, an ambiguity exists, "the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider

6

the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Id.* (footnotes omitted). A contract provision will be deemed ambiguous only if it is susceptible to two or more reasonable, but inconsistent interpretations. *Id.* at n.12.

In dismissing Never Tell's complaint for failure to state a valid claim, the district court necessarily concluded that the relevant terms of the Syndicate Agreement are not ambiguous. This conclusion is understandable, considering each party's respective insistence that § 4.1 is clear and unambiguous. Yet, despite the seeming clarity of the § 4.1 language, the present controversy undeniably stems from two fundamentally different views of the meaning of "acceptable offer," as applied to the Blooming Hills offer. If, upon viewing § 4.1 in the light most favorable to Never Tell, its proffered construction of "acceptable offer" is not shown to be patently unreasonable, then the term cannot be deemed unambiguous, and dismissal of Never Tell's claim based on the pleadings, *i.e.*, without giving the parties opportunity to demonstrate their intentions through extrinsic evidence, is inappropriate.

The Syndicate Agreement does not define "acceptable offer" or, in particular, "acceptable." Kentucky courts often refer to dictionary definitions in order to determine the ordinary meaning of undefined contract terms. *See Commonwealth of Kentucky v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002); *United States Fire Ins. Co. v. Kentucky Truck Sales, Inc.*, 786 F.2d 736, 739 (6th Cir. 1986); *Ayers v. C & D General Contractors*, 237 F.Supp.2d 764, 770 (W.D. Ky. 2002). "Acceptable" is defined primarily as meaning "capable or worthy of being accepted." Merriam-Webster Online Dictionary, *available at* http://www.m-w.com/cgi-bin/dictionary?acceptable. This definition highlights precisely the difference between the parties' instant positions.

7

Never Tell essentially contends that an offer is "acceptable" within the meaning of § 4.1 only if it is *capable* of being accepted. Never Tell therefore argues that because the Blooming Hills offer, as conditioned, was not capable of being accepted by Brereton Jones or Airdrie when it was received on September 22, 2003, for lack of assent of at least 35 co-owners, it was not an "acceptable offer" at that time. It follows then, Never Tell argues, that the September 23, 2003 memorandum could not possibly constitute notice of receipt of an acceptable offer necessary to trigger the 10-day period for exercise of its first right to purchase.

Airdrie and Blooming Hills, on the other hand, maintain that an offer is acceptable if it is *worthy* of being accepted. They insist that because co-owner Jones, on behalf of Syndicate Manager Airdrie, received an offer from Blooming Hills that was, in his opinion, worthy of being accepted, he had received an "acceptable offer." Accordingly, the September 23, 2003 memorandum, advising the syndicate members that co-owner Jones deemed the offer worthy of acceptance, is said to constitute the required notice of an acceptable offer.

In our opinion, neither construction of "acceptable offer" is unreasonable; both are plausible readings of the § 4.1 language. Further, we recognize that most offers that syndicate members receive from third parties are likely to be "acceptable" in both senses of the word. Yet, as applied to the Blooming Hills offer, the two constructions are plainly inconsistent. That is, on September 23, 2003, when Jones, on behalf of Syndicate Manager Airdrie, gave notice of Blooming Hills' offer to the other co-owners, he gave notice of an offer that was at once worthy of acceptance, but not capable of acceptance. Whether the offer was "acceptable," therefore, within the contemplation of § 4.1, depends on which of the two reasonable, but different constructions is actually consistent with the parties' intentions. In the context of this dispute, it thus appears that "acceptable offer," a term

8

of seemingly clear and definite meaning, is actually possessed of latent ambiguity.

The district court side-stepped the question, focusing instead on whether Never Tell received sufficient notice of Blooming Hills' offer to enable it to exercise its first right to purchase. The district court held "the only notice Never Tell was entitled to receive was the notice of an offer to purchase." JA 40. The court went on to reason that "no reasonably prudent person could conclude that Plaintiff did not receive sufficient notice." *Id*.

In effect, the district court's ruling could be viewed as reading the adjective "acceptable" right out of § 4.1, such that notice of receipt by a co-owner of *any* offer, whether acceptable or not, would be deemed sufficient to trigger other co-owners' 10-day period for exercise of their first right to purchase. Such a construction, deleting or ignoring the word "acceptable," is at odds with the court's duty under Kentucky law to construe the agreement as a whole, "giving effect to all parts and every word in it if possible." *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986); *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384-85 (Ky. App. 2002).

Alternatively, the district court's ruling could be viewed as an implicit endorsement of Airdrie's and Blooming Hills' proffered construction of the term "acceptable offer" as more reasonable than Never Tell's. Yet, irrespective of which construction may be more reasonable, the point is that such an assessment cannot be made on the present record at the pleading stage.

Having identified the latent ambiguity in § 4.1 and finding that Never Tell's construction is not implausible or unreasonable, we conclude that Never Tell is entitled under Kentucky law to the opportunity to substantiate its construction of § 4.1 through resort to extrinsic evidence. The district

9

court erred by denying Never Tell this opportunity.[2]

### III. CONCLUSION

Viewing the complaint and attached exhibits in the light most favorable to Never Tell and affording Never Tell the benefit of all reasonable inferences that may be drawn from the facts alleged, we cannot rule as a matter of law that Never Tell can prove no set of facts consistent with the allegations that would entitle it to relief.  In granting the motion to dismiss, the district court erred.  We therefore **REVERSE** the order of dismissal and **REMAND** the matter for further proceedings not inconsistent with this opinion.

---

[2] Insofar as the district court's ruling implies endorsement not only of appellees' construction of "acceptable offer," but also of their position that Airdrie provided conforming notice thereof to the other co-owners, we note in passing that the form of the September 23, 2003 memorandum lends precious little support to appellees' position. *See* JA 25.  The memorandum includes no mention of the first right to purchase, does not solicit a response in terms of any co-owner's  wish to exercise such right, and does not prescribe a 10-day period for response. Instead, directly contrary to appellees' present position, the memorandum appears, on its face, to be designed as a ballot, to ascertain whether Blooming Hills' offer would be rendered capable of acceptance through the expressed assent of the owners of at least 35 of the 40 shares.  We recognize that § 4.1 does not prescribe the form of the Syndicate Manager's notice to the other co-owners.  Still, the apparent incongruence between Airdrie's present position and the nature of its own September 23, 2003 memorandum underscores the need to clarify the parties' intentions through resort to extrinsic evidence, as permitted under Kentucky law.